775 A.2d 34 (2001)
MORRISTOWN MEMORIAL HOSPITAL, Plaintiff-Appellant,
v.
Mary Ann CALDWELL and James Caldwell, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued March 21, 2001.
Decided May 11, 2001.
*35 Lawrence J. McDermott, Jr., East Hanover, argued the cause for appellant (Pressler and Pressler, attorneys; Mr. McDermott, on the brief).
No brief was filed on behalf of respondents.
Before Judges COBURN, LEFELT and AXELRAD.
The opinion of the court was delivered by AXELRAD, J.T.C. (temporarily assigned).
Plaintiff appeals the denial of its unopposed post-judgment motion for turnover of funds from defendants' bank accounts, which stemmed from "defective service." The issue raised by this appeal is whether a judgment creditor is required to provide the result of service in order to demonstrate entitlement to a turnover order under N.J.S.A. 2A:17-63 and the Court Rules. We hold that where a levy is properly made under R. 4:59-1(g) and R. 6:7-1(b), and service of the turnover motion has been made simultaneously by certified and ordinary mail at the debtors' last known address, the application should be granted unless either mailing has been returned by the postal service for any of the reasons set forth in R. 6:2-3(d)(4) indicating that the debtor has not received the moving papers.
As a general rule, applications in aid of execution should be granted without requiring supplemental proof of service reciting that certified or registered mail service failed because it was refused or not claimed. When a motion is served by ordinary mail, it is presumed to have been delivered on the third business day after mailing. R. 1:6-3(c). Creditor's counsel has an ethical obligation under R.P.C. 3.3(a)(5) to promptly inform the court if the ordinary or certified mail is returned with a notation such as "moved, unable to forward" or "addressee not known," or if counsel for the creditor has "other reason to believe that service was not effected." R. 6:2-3(d)(4).
In so holding, we respectfully disagree with our court's decision in Morristown Memorial Hosp. v. Tureo, 329 N.J.Super. 154, 746 A.2d 1088, certif. denied, 165 N.J. 487, 758 A.2d 647 (2000). In that case, plaintiff certified that, on a specific date, a motion for a wage execution was sent to defendant's last known address by certified mail, return receipt requested, and by regular mail. The court held that in order for the creditor to rely on the ordinary mail service, it was required to submit supplemental proof of service reciting "either that the certified or registered mail was accepted and the date of acceptance or... [it] was either refused or not accepted." Id. at 157, 746 A.2d 1088 (App.Div.). We believe that Tureo has unnecessarily delayed post-judgment collection proceedings *36 by imposing a requirement not warranted by the rules or due process.

I
On August 31, 1999, plaintiff sued for unpaid medical bills for hospital services rendered to defendants' minor children. On September 14, 1999, service of the summons and complaint was effected. Since defendants failed to file an answer or other responsive pleading, the clerk of the Special Civil Part automatically entered default against defendants on October 4, 1999. R. 6:6-2. On October 25, 1999, default judgment was entered upon affidavit in the amount of $317.17, including costs. R. 6:6-3.
The judgment debtors failed to respond to an information subpoena served on December 15, 1999, pursuant to R. 6:7-2. On January 13, 2000 plaintiff sought a writ of execution to levy upon defendants' bank accounts, pursuant to R. 6:7-1(a). On April 5, 2000, the Special Civil Part court officer levied upon defendants' bank accounts at Summit Bank containing $132.53. The court officer mailed a notice to the debtors in the form prescribed by Appendix VI, sent a copy to plaintiff, and filed a copy with the court clerk. R. 6:7-1(b), incorporating R. 4:59-1(g).
On April 25, 2000, plaintiff filed a motion for turnover of funds pursuant to N.J.S.A. 2A:17-63 and R. 4:59-1(g). Pursuant to R. 1:5-2, the motion was simultaneously served upon defendants by certified mail, return receipt requested, and regular mail at the same address contained on the summons, which was believed to be their last known address, and on the garnishee Summit Bank. Service of the motion was also made by ordinary mail on the clerk of the court pursuant to R. 1:5-2, in the event that defendants' current address was unknown to plaintiff's counsel. Plaintiff's moving papers included proof of service detailing the above in accordance with R. 1:5-3. No opposition was filed by defendants or the bank.
On May 1, 2000, defendants sent plaintiff's counsel a money order in the amount of $207.54 representing the difference between the judgment and the bank levy. On May 31, 2000, the Special Civil Part Judge denied plaintiff's motion for turnover of the levied funds, noting on the order for turnover that "[t]here is no certificate as to Results of Service." No further explanation was provided by the judge for her denial of the motion. We presume, however, that she extended our holding in Tureo, dealing with wage executions, to a post-judgment garnishment proceeding.
On appeal, plaintiff asserts that the motion judge erred in requiring proof of the result of the certified mail service where the levy was made under R. 4:59-1(g) and R. 6:7-1(b), notice was served under R. 1:5-2, and proof of service was filed under R. 1:5-3. Plaintiff argues that this additional requirement is not warranted under the court rules, that the statute and court rules provide adequate notice and opportunity to judgment debtors concerning bank levies and turnover motions to satisfy due process, and that the additional notice requirement creates a practical and procedural impossibility. Plaintiff urges us to distinguish or decline to follow Tureo. We were advised by plaintiff's counsel during oral argument that the Committee of Special Civil Part Presiding Judges recommended that Tureo be limited to wage executions.

II
A writ of execution is a method used to enforce a judgment for the payment of money. R. 4:59-1(a), R. 6:7-1(a). Rule 4:59-1(g) mandates the procedure for notifying *37 the debtor when a levy upon a bank account has occurred:
a) The court officer shall mail notice of the levy to the defendant on the very day the levy is made;
b) The notice shall be in the form shown in Appendix VI of the rules, which informs a judgment debtor of exemptions and how to claim them, that the account has been frozen, and that the funds will not be taken from the account absent a court order; and
c) A copy of the notice shall be promptly filed by the levying officer with the court clerk and mailed to the person requesting the levy.
This rule also provides for a prompt post-seizure hearing within seven days of the court's receipt of a formal or informal claim of exemption filed by the debtor in accordance with Finberg v. Sullivan, 634 F.2d 50 (3rd Cir.1980). Further protection is afforded the debtor by directing that "[n]o turnover of funds or sale of assets may be made, in any case, until 20 days after the date of the levy and the court has received a copy of the properly completed notice to debtor." R. 4:59-1(g).
N.J.S.A. 2A:17-63, Order to garnishee to pay debt, requires a turnover motion to be filed after the levy is made. This statute provides that:
After a levy upon a debt due or accruing to the judgment debtor from a third person, herein called the garnishee, the court may upon notice to the garnishee and the judgment debtor, and if the garnishee admits the debt, direct the debt, to an amount not exceeding the sum sufficient to satisfy the execution, to be paid to the officer holding the execution....
Although the court rule on enforcing judgments does not expressly mandate that the notice of turnover be served on the judgment debtor in accordance with R. 1:5-2, as it does with regard to a notice of wage execution, R. 4:59-1(d), counsel for plaintiff does not dispute that such requirement should be inferred. See R. 1:5-1.
Plaintiff's motion for turnover was filed twenty days after the levy, R. 4:59-1(g), and was served in accordance with R. 1:5-1 and R. 1:5-2. Rule 1:5-2, Manner of Service, provides:
Service upon a party of such papers [referred to in R. 1:5-1, which includes written motions] shall be made as provided in R. 4:4-4 or by registered or certified mail, return receipt requested, to the party's last known address; or if the party refuses to claim or to accept delivery, by ordinary mail to the last known address; or if no address is known, by ordinary mail to the clerk of the court.... Where mailed service is made upon a party, the modes of service may be made simultaneously.
Service was made on defendants at their last known address and on the garnishee bank by certified mail, return receipt requested, and simultaneously by regular mail. In accordance with R. 1:5-2, service was also made upon the court clerk, although this appears to be a futile gesture as there was no request for any action to be taken by the clerk. Plaintiff filed proof of service setting forth the date of mailing, the modes of service, and the recital that the "mailing was to the last known address of the person[s] served" as required by R. 1:5-3.
The levy was properly made. The turnover motion was correctly filed and served, and defendants were given reasonable notice and opportunity to be heard in opposition to the requested relief. By requiring a supplemental certification of the results of certified or registered mail service, the court below effectively *38 nullified the R. 1:6-3(c) presumption of receipt of the notice of motion on the third business day after ordinary mailing. Actual knowledge of the failure or refusal to claim or accept delivery of the certified mail is not a prerequisite for ordinary mail to be deemed to constitute service under R. 1:5-4. If ordinary mail has not been returned, we can presume that it was properly addressed and delivered, and can expect that certified mail sent to the same address was delivered or will be refused or unclaimed. Most likely the certified mail will be returned unclaimed presumably because debtors who have received the regular mail will not make a trip to the post office to pick up a duplicate copy by certified mail.
Requiring a movant to wait until the post office supplies the results of the certified or registered mail service, in order to recite in a supplemental certification the date of acceptance, refusal, or non-claiming of delivery, is not warranted under the court rules. By requiring sequential certifications, a backlog is unnecessarily created in a court that already processes a high volume of post-judgment executions. Finally, such a requirement creates a procedural roadblock for creditors, without any corresponding due process benefits to the debtor.
We are aware of the significant amount of time it takes for the post office to process certified mail. Under regular post office procedure, certified mail, return receipt requested, is returned to the post office and marked unclaimed if no one accepts delivery by signing the return receipt. A call notice is left at the designated address advising the addressee that the certified mail is being held at the post office. After five days a second attempt is made to deliver the mail, and if again unsuccessful, the letter is returned to the sender ten days thereafter with a notice that it was unclaimed. See Towne Oaks at South Bound Brook v. Borough of South Bound Brook, 326 N.J.Super. 99, 101, 740 A.2d 684 (App.Div.1999), certif. denied, 164 N.J. 188, 752 A.2d 1290 (2000), and Cardinale v. Mecca, 175 N.J.Super. 8, 11, 417 A.2d 551 (App.Div.1980) (explaining the 1980 practice which has been slightly modified). In fact, the delay was even longer in this case. The certified mail was not returned to plaintiff's counsel until June 1, 2000, over five weeks after mailing.
The executing creditor is faced with a daunting task if required to provide a supplemental certification of results of service in order to obtain a turnover order of levied funds. Under R. 1:5-3, the movant is required to file proof of service "promptly and in any event before action is to be taken on the matter by the court." When a motion is filed in the Special Civil Part, R. 6:3-3(c)(2) provides that an order will be entered in the discretion of the court unless the party on whom the motion is served objects to the entry of the order in writing within ten days after the motion is served.[1] Accordingly, by allowing three additional days for ordinary mailing under R. 1:3-3, the court is in position to act on the application thirteen days after the motion is filed. It is rare that the unclaimed or refused certified mail will be returned to the sender within that time. Thus, a creditor seeking prompt satisfaction of its judgment is penalized by postal service delays if required to provide the results of certified mail service as demanded by the court below.
Either under the Tureo rationale or the determination made by the Special Part *39 Judge in our case, a diligent judgment creditor has its motion denied without prejudice pending receipt of a supplemental certification (which it can only do after it receives the results of certified mail service back from the post office) or, as occurred in this case, has its motion denied for failure to submit a "certificate as to Results of Service." The creditor may then have to expend additional time and money to re-file and personally serve the motion, which is contrary to the reasons why Special Civil Part jurisdiction was chosen in the first place, and which defeats the language and spirit of the court rules.
Moreover, the application of Tureo is spurring anomalous results. Plaintiff's counsel submitted two recent orders he obtained denying requests for wage executions even after submission of supplemental proofs of service as to the results of certified mail. Each judge has created an impossible hurdle for the post-judgment creditor. One judge held that "`unclaimed' is not the same as `refused' or `not accepted.'" Another judge held that "`refused' may mean by someone other than defendant" and required submission of the envelope "to assure refusal by defendant, not current resident or other person."[2]
The use of first-class regular mail provides a low-cost and efficient means of effecting service of legal papers on pro se defendants. Our Supreme Court recognized that the postal service was sufficiently reliable even for service of original process filed in the Special Civil Part when, in January 1987, it permitted the establishment of a county by county service by mail program, at the discretion of the Assignment Judge, in which the court clerk simultaneously mails the summons and complaint by both certified and regular mail. R. 6:2-3(d)(1); See, generally as to its concept and intended operation, Special Civil Part Subcommittee Report on Service by Mail, 118 N.J.L.J. Index page 293 (1986), cited in Pressler, supra, Comment 4 on R. 6:2-3.
We hold that effective service of postjudgment execution applications should parallel the mandate contained in R. 6:2-3(d)(4), which provides for a common sense approach that satisfies due process. According to this rule,
Consistent with due process of law, service by mail pursuant to this rule shall have the same effect as personal service, and the simultaneous mailing shall constitute effective mailing unless the mail is returned to the court by the postal service marked "moved, unable to forward," "addressee not known," "no such number/street," "insufficient address," "forwarding order expired," or counsel for the creditor has any other reason to believe that service was not effected....
Our decision is consistent with New Jersey Court Rule amendments that were precipitated by postal service delays and intended to streamline the process. Rules 1:5-2 and 1:5-4 were amended over fifteen years ago to permit simultaneous service by certified and regular mail, thereby "relieving the party making service of having to wait until the registered or certified mail is refused or unclaimed before making ordinary mail service." Pressler, supra, Comment on R. 1:5-4.
Moreover, "because of its impracticality in view of substantial post office delays occurring in recent years and its general unwieldiness," the September 1990 amendment to R. 1:5-3 eliminated the requirement *40 of the return receipt card as part of the filed proof of certified or registered mail service. Pressler, supra, Comment on R. 1:5-3. "In order to protect defendants' notice rights in view of the elimination of the card-filing requirement, the rule was also then amended to require the affidavit or certification of service to attest that the mailing was sent to the person's last known address." Id.
Our procedure satisfies the due process concern of Finberg, supra, 634 F.2d at 58, and balances the competing interest of the creditor in obtaining satisfaction of its judgment in an expeditious, inexpensive proceeding. Immediately after a bank levy is made, the court officer is required to mail the debtor a notice of the levy with instructions as to objecting, presumably at the address of the initial pleadings, unless a more current address is provided by the creditor when the levy is requested. R. 4:59-1(g). We can also take judicial notice of the fact that the bank also sends out a debit notice to the debtor advising that the account has been frozen by the levy and imposing bank service charges against the account. The bank most likely has the debtor's current address since monthly statements are usually mailed. Thus, if a debtor does not receive the court officer's notice of the levy, it is reasonable to assume that the debtor has received notice from the bank, given the debtor's strong motivation to keep the bank apprised of any address changes. It is reasonable to assume that the debtor has already received one, if not two notices that the levy has occurred, before the creditor applies for a turnover of the funds.
As a practical matter, even if the mail is returned indicating that the debtors did not receive any notice of the motion for turnover after the order is signed, it will still take considerable time for the creditor to actually receive the levied funds, so there is less chance of prejudice to the debtor.[3] Moreover, there are sufficient safeguards in the rare case where none of the notices are delivered to the debtors or returned to the sender, or where a returned envelope inadvertently goes unnoticed in the attorney's office. Rule 4:50 provides for relief from judgment or order if made "within a reasonable time, and for reasons (a), (b) and (c) of R. 4:50-1 not more than one year after the judgment, order or proceeding was entered or taken." R. 4:50-1 and -2.
In the present case, the judgment creditor complied with the court rules and due process. Although not necessary to our holding, it is clear that the debtors received plaintiff's turnover motion, as evidenced by their issuance of a money order representing payment of the remaining balance due on the judgment. We reverse the decision of the judge below and direct the entry of an order for turnover of the levied funds.
Reversed and remanded to the trial court for the entry of a turnover order.
NOTES
[1] At the time of the court's decision below, R. 6:3-3(c)(2) provided for a five-day period to respond to a motion, or ten days if the motion was for summary judgment. In September 2000 the rule was amended to extend the time for all motions to ten days.
[2] Although the exact language in Tureo is "refused or not accepted," paralleling the language of 1:5-2, common sense dictates that this includes postal service notations indicating that certified mail service "failed" such as "unclaimed" or "not claimed." See, e.g., Pressler, Current N.J. Court Rules, Comments on R. 1:5-2 and R. 1:5-3 (2001); R. 1:5-4.
[3] The turnover order is mailed from the court to the movant to the court officer to the bank. The bank then sends the funds to the court officer who completes the paperwork, deducts the commission, and then remits the balance of the levied funds to the movant.