795 A.2d 868

FIRST RESOLUTION INVESTMENT CORPORATION, PLAINTIFF–APPELLANT, v. BILAL SEKER, DEFENDANT.

Argued November 26, 2001—Decided May 8, 2002.

504

*Hillary Veldhuis* argued the cause for appellant (*Lyons, Doughty & Veldhuis,* attorneys).

*Lawrence J. McDermott, Jr.,* argued the cause for amicus curiae The New Jersey Creditors Bar Association (*Pressler and Pressler,* attorneys, *Mr. McDermott, Sheldon H. Pressler* and *Steven P. McCabe,* on the brief).

*Melville D. Miller, Jr.,* General Counsel, argued the cause for amicus curiae Legal Services of New Jersey (*Mr. Miller,* attorney; *Mr. Miller, David G. McMillin* and *Stephanie Setzer,* on the brief).

The opinion of the Court was delivered by

VERNIERO, J.

We directly certified this appeal, 169 *N.J.* 596, 782 *A.*2d 417 (2001), to resolve a conflict in the Appellate Division in respect of certain provisions governing service of process under our Rules of Court. Plaintiff sent a written notice of its application for wage execution to defendant by certified and regular mail. The post office returned the certified letter, marking it "unclaimed." The letter sent by regular mail was not returned. Plaintiff submitted the wage execution application to the trial court along with a certification of service specifying that plaintiff had sent the notice to defendant by regular and certified mail to his last known address, and that the certified letter was returned "unclaimed."

The trial court denied plaintiff's requested relief, concluding that plaintiff did not satisfy the requirements of *Morristown*

*Memorial Hospital v. Tureo,* 329 *N.J.Super.* 154, 746 *A.*2d 1088 (App.Div.), *certif. denied,* 165 *N.J.* 487, 758 *A.*2d 647 (2000). The *Tureo* court held that a creditor seeking a post-judgment wage execution must indicate in a proof of service certification that the notice sent by certified mail to the debtor was refused or not accepted before ordinary mail constitutes valid service. *Id.* at 157, 746 *A.*2d 1088. Relying on *Tureo,* the trial court held that "even though regular mail was not returned, service was not effected. 'Unclaimed' is not the same as 'Refused' or 'Not Accepted'."

A subsequent panel of the Appellate Division held that service by regular mail of a notice seeking to levy on a debtor's bank accounts was valid even without proof of the results of service by certified mail. *Morristown Mem'l Hosp. v. Caldwell,* 340 *N.J.Super.* 562, 564, 775 *A.*2d 34 (App.Div.2001). The *Caldwell* court explicitly rejected the rule announced in *Tureo. Ibid.*

We conclude that the *Caldwell* court's construction is more in keeping with the policies that underlie the service rules. Accordingly, we hold that plaintiff's proof of service certification was adequate under the rules. Apart from that issue, however, we further conclude that the content of notices served on debtors should contain information heretofore not required under *Rule* 4:59–1(d). The new information is intended to help debtors better understand their procedural rights. We direct the Civil Practice Committee to review that and other possible rule changes as described more fully below.

I.

The facts are straightforward. Defendant owed plaintiff approximately $3000 for an unpaid credit card balance in addition to annual interest as set forth in the parties' credit card agreement. On March 24, 2000, plaintiff sued defendant in the Special Civil Part to recover the monies owed. Plaintiff sent the summons and complaint to defendant by regular and certified mail. The certified mail return-receipt card was returned unsigned, and the reason for the non-delivery is unknown. (The notation of the post

office that usually describes the reason for non-delivery is illegible.)

Defendant did not answer, appear, or otherwise respond to the complaint. Consequently, a default judgment was entered against defendant in the amount of $5,206.30 in addition to costs and attorneys' fees. The record does not indicate how the original indebtedness grew to that amount.

Seeking to garnish defendant's wages to recover on the judgment, plaintiff sent a notice of application for wage execution by regular and certified mail to defendant's last known address. After three attempts to notify defendant of the certified mailing, the post office returned the certified mail envelope to plaintiff. A postal official checked off a box on a notation stamped on the outside of the envelope indicating that the letter was "unclaimed." The regular mail notice was not returned. Defendant filed no objection within the ten-day period provided under *Rule* 4:59–1(d). Thereafter, plaintiff forwarded a proposed order for wage execution to the trial court. Along with the proposed order, plaintiff provided a certification of service indicating that it had sent the notice to defendant by regular and certified mail to defendant's last known address, and that the certified mail had been returned "unclaimed."

The trial court denied plaintiff's application. Citing *Tureo, supra,* 329 *N.J.Super.* at 157, 746 *A.*2d 1088, the court stated in a brief, unreported decision: "Plaint[iff] does not show that the certified mail service was 'refused or not accepted'. Plaintiff shows that certified mail was 'unclaimed'. Therefore, even though regular mail was not returned, service was not effected. 'Unclaimed' is not the same as 'Refused' or 'Not Accepted'."

Plaintiff appealed the trial court's determination to the Appellate Division. After the Appellate Division docketed the case and granted *amicus curiae* status to the New Jersey Creditors Bar Association (Bar Association), we granted plaintiff's motion for direct certification. We also granted *amicus curiae* status to Legal Services of New Jersey (Legal Services), which participated

on behalf of defendant. Defendant himself has not appeared at any stage of these proceedings.

## II.

### A.

■ We begin our analysis by setting forth the relevant Rules of Court that are at the heart of the conflict between *Tureo* and *Caldwell*. *Rule* 4:59–1(d) governs the procedure for enforcing judgments through wage executions. It states, in part, that

[t]he notice of wage execution shall be served on the judgment debtor *in accordance with R. 1:5–2.* A copy of the notice of application for wage execution, together with *proof of service in accordance with R. 1:5–3,* shall be filed with the clerk at the time the form of order for wage execution is submitted.

[*R.* 4:59–1(d) (emphasis added).]

*Rule* 1:5–2 states, in part, that service on a party

shall be made ... by registered or certified mail, return receipt requested, to the party's last known address; or if the party *refuses to claim or to accept delivery, by ordinary mail to the last known address;* ... Where mailed service is made upon a party, the modes of service may be made simultaneously.

[ (Emphasis added).]

*Rule* 1:5–3 describes the required proof of service and provides, in part, that

[i]f service has been made by mail the [proof of service] *certification shall state that the mailing was to the last known address of the person served ....* Where service has been made by registered or certified mail, filing of the return receipt card with the court shall not be required.

[ (Emphasis added).]

As noted, the above procedures govern a party's enforcement of judgments through wage executions. A separate rule, *Rule* 1:5–4(a), describes when service by mail is complete irrespective of whether a party is seeking to enforce a judgment. That rule states, in part:

Where under *any* rule, provision is made for service by certified or registered mail, service may also be made by ordinary mail simultaneously or thereafter. If the addressee *fails or refuses to claim or to accept delivery of certified or registered mail,* the ordinary mailing shall be deemed to constitute service.

[*R.* 1:5–4(a) (emphasis added).]

The comment to *Rule* 1:5–4(a) states that "this rule ... merely restate[s] the practice already prescribed by *R.* 1:5–2 for service of papers after process." Pressler, *Current N.J. Court Rules,* comment 1 on *R.* 1:5–4 (2002). Notably, the pertinent language in *Rule* 1:5–2 ("refuses to claim") is slightly different from the language in *Rule* 1:5–4(a) ("fails or refuses to claim"). That difference apparently has caused some confusion as evidenced by the conflicting Appellate Division decisions.

Against that backdrop, we now turn to those conflicting decisions. The creditor in *Tureo* filed a notice of motion for wage execution against the debtor to collect a default judgment in the amount of $397.50 plus interest. *Tureo, supra,* 329 *N.J.Super.* at 155, 746 *A.*2d 1088. The creditor certified in its proof of service that it had sent the motion to the debtor's last known address by regular and certified mail. *Ibid.* The trial court denied the motion, and the Appellate Division affirmed that denial, adopting the trial court's opinion in its entirety. *Id.* at 156–57, 746 *A.*2d 1088.

In that opinion, the trial court noted that the simultaneous mailing provision in *Rule* 1:5–2 does not relieve a creditor from having to certify that a debtor "refused to claim or to accept" the certified mail before service by ordinary mail is deemed permissible. *Id.* at 156, 746 *A.*2d 1088. In addition, the trial court stated that the content of the proof of service certification is not limited to the language of *Rule* 1:5–3 ("the mailing was to the last known address of the person served"), because the purpose of that rule is to demonstrate that service has been effected, not merely attempted. *Id.* at 157, 746 *A.*2d 1088. The trial court, therefore, concluded that

> service by ordinary mail is effective to give notice of an application to the court for a wage execution *only when the certified or registered mail has been refused or not accepted.* Thus, in order to demonstrate effective, timely service, the proof filed with the court must recite either that the certified or registered mail was accepted and the date of acceptance or *must recite that the certified or registered mail was either refused or not accepted* and set forth the date of ordinary mail service.
>
> [*Ibid.* (emphasis added).]

In contrast, the *Caldwell* plaintiff filed a post-judgment motion for the turnover of funds levied against the defendant under *Rule* 4:59–1(g). *Caldwell, supra,* 340 *N.J.Super.* at 565, 775 *A.*2d 34. The motion was served by certified mail and regular mail to the defendant's last known address, and the plaintiff set forth those details in its proof of service. *Ibid.* The trial court denied the plaintiff's motion, noting that "[t]here is no certification as to Results of Service." *Id.* at 565–66, 775 *A.*2d 34. The Appellate Division reversed and remanded for the entry of the turnover order. *Id.* at 573, 775 *A.*2d 34.

The *Caldwell* panel determined that when "service of the turn-over motion has been made simultaneously by certified and ordinary mail at the debtor['s] last known address, the [creditor's] application should be granted" so long as either mailing was not returned for the reasons stated in *Rule* 6:2–3(d)(4). *Id.* at 564, 775 *A.*2d 34. That rule governs service of process in the Special Civil Part, stating, in relevant part, that simultaneous mailing of certified and regular mail "shall constitute effective service unless the mail is returned to the court by the postal service marked 'moved, unable to forward,' 'addressee not known,' 'no such number/street,' 'insufficient address,' . . . or the court has other reason to believe that service was not effected." *R.* 6:2–3(d)(4).

In reaching that conclusion, the Appellate Division explicitly disagreed with *Tureo*. *Caldwell, supra,* 340 *N.J.Super.* at 564, 775 *A.*2d 34. The panel stated that *Tureo's* requirement of supplemental proof that a certified mailing was refused or not accepted before granting an application for post-judgment execution "unnecessarily delayed post-judgment collection proceedings by imposing a requirement not warranted by the rules or due process." *Ibid.* The *Caldwell* court noted that requiring such supplemental proof runs contrary to the *Rule* 1:6–3(c) presumption that service by ordinary mail is completed on the third business day after mailing. *Id.* at 568, 775 *A.*2d 34. The court further observed that the *Tureo* opinion "is spurring anomalous results," and that the application of *Tureo* has allowed trial courts

to place "impossible hurdle[s]" in the path of post-judgment creditors. *Id.* at 570, 775 *A.*2d 34.

In sum, *Tureo* requires that judgment creditors seeking a post-judgment wage garnishment must indicate, in the proof of service certification, that the certified mailing of notice sent to the debtor was either refused or not accepted before ordinary mail can be deemed to constitute valid service. In contrast, under *Caldwell,* a judgment creditor need not recite the outcome of the certified mailing in the proof of service. Rather, a proof of service is sufficient if the creditor describes the date of mailing, the modes of service, and that the "mailing was to the last known address of the person served." *R.* 1:5-3.

### B.

 " 'As a general rule of statutory construction, we look first to the language of the statute. If the statute is clear and unambiguous on its face and admits of only one interpretation, we need delve no deeper than the act's literal terms to divine the Legislature's intent.' " *State v. Thomas,* 166 *N.J.* 560, 567, 767 *A.*2d 459 (2001) (quoting *State v. Butler,* 89 *N.J.* 220, 226, 445 *A.*2d 399 (1982)). "The same principles of statutory construction apply to rule construction." *State v. Vigilante,* 194 *N.J.Super.* 560, 563, 477 *A.*2d 429 (App.Div.1983); *see also Douglas v. Harris,* 35 *N.J.* 270, 278, 173 *A.*2d 1 (1961) (applying canons of construction in interpreting court rule).

Arguably, the language of *Rule* 1:5-3 is clear and unambiguous. The rule requires that the proof of service indicate that a mailing was sent to a party's last known address and nothing more. That, of course, does not preclude a party from including additional details in respect of the outcome of a certified mailing, but the rule does not require such information. Simply, the additional proof of service requirement mandated by *Tureo* finds no foundation in the language of *Rule* 1:5-3.

■ *Rule* 1:5-3, however, cannot be viewed in a vacuum. Reading that rule in conjunction with *Rule* 1:5-2 (the rule pertaining to manner of service), we observe a possible ambiguity in that *Rule* 1:5-2 refers to a party who "refuses to claim or to accept delivery [of the certified mail.]" That language suggests that a judgment creditor must describe those details before service by ordinary mail is deemed valid. If a statute or rule is ambiguous, courts may ascertain the intent of the drafters by looking to extrinsic sources such as the statute's or rule's underlying purpose and history. *Clymer v. Summit Bancorp.*, 171 *N.J.* 57, 66, 792 *A.*2d 396 (2002) (citing *Aponte–Correa v. Allstate Ins. Co.*, 162 *N.J.* 318, 323, 744 *A.*2d 175 (2000)).

The history of *Rule* 1:5-3 suggests that its drafters intended to make service by mail in post-judgment executions less, not more, burdensome for parties. For example, in September 1990, an amendment to the rule eliminated the requirement that a return-receipt card be filed along with the proof of service "in view of substantial post office delays." Pressler, *supra,* comment on *R.* 1:5-3. To protect a defendant's interests in view of that amendment, the drafters added the requirement that the proof of service attest to the fact that the mailing was sent to the party's last known address. *Ibid.*

In addition, both *Rule* 1:5-2 and *Rule* 1:5-4(a) (the rule describing when service is complete) were amended in 1981 and 1986 respectively to allow ordinary mail service to be made simultaneously with certified mail service. Pressler, *supra,* comment on *R.* 1:5-2, comment 1 on *R.* 1:5-4. Those revisions were made "to expedite service by relieving the party making service of having to wait until the registered or certified mail is refused or *unclaimed* before making ordinary mail service." *Id.* at comment 1 on *R.* 1:5-4 (emphasis added).

Further, "[t]he general intent of [a] statute [or rule] controls the interpretation of its component parts." *Nat'l Waste Recycling, Inc. v. Middlesex County Improvement Auth.*, 150 *N.J.* 209, 223, 695 *A.*2d 1381 (1997) (citing *State v. Szemple*, 135 *N.J.* 406, 422,

640 *A.*2d 817 (1994)). Along those lines, the rules themselves direct that they are to "be construed to secure a just determination, simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay." *R.* 1:1–2. Requiring a party to submit supplemental proof in a post-judgment action appears to run counter to those objectives, especially the goal of eliminating unjustifiable expense and undue delay in court proceedings.

## C.

We recognize the literal difference between "unclaimed" and "refused or not accepted." We nonetheless agree with the *Caldwell* court that in respect of the latter phrase, "common sense dictates that this [phrase] includes postal service notations indicating that certified mail service 'failed' such as 'unclaimed' or 'not claimed.'" *Caldwell, supra,* 340 *N.J.Super.* at 570 n. 2, 775 *A.*2d 34. The comments to *Rule* 1:5–2 and *Rule* 1:5–4(a), to the extent they reveal "legislative" intent, indicate that the rule drafters intended no distinction between mail that is "unclaimed" and mail that a party "refuses to claim." See Pressler, *supra,* comment on *R.* 1:5–2, comment 1 on *R.* 1:5–4. Although a literal distinction between the two phrases may suggest otherwise, we are satisfied that *Caldwell's* interpretation is consonant with the intent underlying the rules. See *Town of Morristown v. Woman's Club of Morristown,* 124 *N.J.* 605, 610, 592 *A.*2d 216 (1991) (observing that plain language of statute [or rule] should be given effect unless there is "specific indication of legislative intent to the contrary").

## D.

Due process is implicated in this case because a wage garnishment affects defendant's interest by depriving him of the continued use of some portion of his property. See *Township of Montville v. Block 69, Lot 10,* 74 *N.J.* 1, 8, 376 *A.*2d 909 (1977) (holding that deprivation of property must conform to due process principles). In New Jersey, as elsewhere, "[t]he essential compo-

nents of due process are notice and an opportunity to be heard." *Mettinger v. Globe Slicing Mach. Co.*, 153 *N.J.* 371, 389, 709 *A.*2d 779 (1998) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 *U.S.* 306, 313, 70 *S.Ct.* 652, 656–57, 94 *L. Ed.* 865, 873 (1950)).

As noted by *amicus* Bar Association, our court rules provide debtors with numerous protections. For example, debtors are accorded notice before their wages are garnished, are notified of the procedure by which to challenge the garnishment within ten days of receiving that notice, are given the opportunity to object after the court orders the garnishment, and are entitled to a hearing within seven days of that objection. *R.* 4:59–1(d). Consistent with *Caldwell*, those protections are at least as comprehensive, if not more so, than those required by other jurisdictions. *See, e.g., McCahey v. L.P. Investors*, 774 *F.*2d 543, 549 (2d Cir.1985) (finding due process satisfied when judgment debtors are notified about garnishment and available exemptions *after* property is seized, and when they have opportunity to challenge seizure promptly); *Brown v. Liberty Loan Corp.*, 539 *F.*2d 1355, 1368 (5th Cir.1976) (holding that due process does not require notice or hearing before writ of garnishment issues).

■ Similarly, we agree with those courts that have observed that service by mail is an "efficient and inexpensive way" to serve litigants. *Mullane, supra,* 339 *U.S.* at 319, 70 *S.Ct.* at 660, 94 *L. Ed.* at 876. In *Feuchtbaum v. Constantini,* 59 *N.J.* 167, 181, 280 *A.*2d 161 (1971), this Court held that due process is satisfied when a defendant, who cannot be found for personal service but is a resident of the State at the time of the actionable event, is served by ordinary mail at his or her last known address. In short, we find nothing in the procedure followed by plaintiff, or in the language of the rules as interpreted by *Caldwell*, that violates the basic requirements of due process.

We conclude that the *Caldwell* court's construction is more in keeping with the policies that underlie the service rules than the construction advanced in *Tureo*. Accordingly, we find plaintiff's proof of service certification to be adequate under the rules.

## III.

### A.

 Plaintiff's notice of wage execution served on defendant tracked the language of the form of notice provided in the Rules of Court at Appendix XI–I. That notice informs debtors that they have the right to contest a wage execution within ten days of receiving notice. It does not, however, inform debtors that they may object *after* the wage execution has been ordered and that they are entitled to a hearing within seven days of the clerk's receipt of the objection. *R.* 4:59–1(d).

 Legal Services, as *amicus,* argues that that omission renders the notice constitutionally infirm. Briefly stated, the requirements of due process are met in this context so long as the notice is "reasonably calculated" to give parties the "opportunity to present their objections." *Mullane, supra,* 339 *U.S.* at 314, 70 *S.Ct.* at 657, 94 *L. Ed.* at 873. Information regarding the ten-day objection period already informs debtors of their right to challenge the wage execution. Due process is thus satisfied without the inclusion of the additional information sought by *amicus.*

That said, we find merit in Legal Services' position, not because of a constitutional mandate, but as a matter of fairness and sound public policy. See *Lacey Mun. Utils. Auth. v. New Jersey Dep't of Envtl. Prot.,* 162 *N.J.* 30, 40, 738 *A.*2d 955 (1999) (observing that agencies should be guided by "basic fairness in determining how best to effectuate public policy"); *In re Polk License Revocation,* 90 *N.J.* 550, 579, 449 *A.*2d 7 (1982) (remanding license revocation case for hearing before licensing agency not due to constitutional requirements, but "as a matter of simple fairness"); *Avant v. Clifford,* 67 *N.J.* 496, 526–27, 341 *A.*2d 629 (1975) (concluding that although membership of prison board satisfied due process requirements, "rightness and fairness" required certain modifications).

We are persuaded that debtors will benefit from the added knowledge that they may object after a wage execution has been

issued. We also find little or no burden on judgment creditors in providing that additional information. In this narrow setting, we do not hesitate to exceed the minimum requirements of due process because to do so places little or no additional burden on creditors.

 Accordingly, we direct the Civil Practice Committee to review the notice requirements under *Rule* 4:59–1(d) as reflected in the form at Appendix XI–I of the Rules of Court, and to recommend revised language to inform debtors of their continuing right to challenge wage executions. Until such language is adopted, we suggest that judgment creditors include in their notices a statement that clearly and unambiguously conveys the rights of debtors in that regard. See *Cmty. Realty Mgmt. v. Harris,* 155 *N.J.* 212, 240, 714 *A.*2d 282 (1998) (directing Special Civil Part Practice Committee to prepare changes to rules involving consent judgments to avoid unfair treatment of *pro se* tenants).

Our disposition raises the question whether we should require the revised notice in the present case or in future cases only. See *State v. Purnell,* 161 *N.J.* 44, 53–59, 735 *A.*2d 513 (1999) (discussing pertinent factors to consider when undertaking retroactivity analysis). Here, the revised language is not required either by the current text of the rules or by due process. Moreover, the notice sent to defendant informed him of his right to contest the wage execution within ten days of receiving that notice, plaintiff's proof of service certification was adequate under existing rules, and defendant has not objected at any stage of these proceedings.

Under those circumstances, plaintiff should not be required to recommence a process of collecting on its uncontested judgment that already has taken over two years to complete. "The notion of rerunning the process at this late juncture has an air of futility to it." *Golden v. County of Union,* 163 *N.J.* 420, 435, 749 *A.*2d 842 (2000). We are thus satisfied that the revised language should be included only in those notices arising out of judgments entered after the date of this opinion.

## B.

Lastly, although we have resolved the issues most pertinent to this appeal, we acknowledge that Legal Services has brought to our attention other provisions of our court rules that may require further consideration. First, *Rule* 6:2–3 contains postal designations, such as "moved, unable to forward," that may be inconsistent with existing post office practices, and, therefore, that rule should be revised to ensure that it contains more appropriate language. Second, the difference in language between *Rule* 1:5–2 ("refuses to claim") and *Rule* 1:5–4(a) ("fails or refuses to claim") should be harmonized to avoid further confusion. Third, a requirement that a creditor must include information in respect of how it obtained a debtor's "last known address" in the proof of service also should be carefully considered because post-judgment service of process relies so heavily on the accuracy of that address.

The Civil Practice Committee is the appropriate entity to evaluate those proposals. We thus direct that Committee to review the revisions suggested by *amicus* and to recommend any additional changes to our service or notice rules consistent with the principles enunciated in this opinion. The Civil Practice Committee should seek input from the Special Civil Part Practice Committee to the extent that the proposals implicate rules within the purview of that latter committee.

## IV.

The judgment of the trial court is reversed. *Tureo* is overruled. The Civil Practice Committee is directed to review the issues identified above and to make appropriate recommendations as part of the regular rules cycle.

*For reversal*—Chief Justice PORITZ and Justices STEIN, COLEMAN, LONG, VERNIERO, LaVECCHIA, and ZAZZALI—7.

*Opposed*—None.