885 A.2d 507

IN THE MATTER OF THE APPEAL OF DENIAL OF
APPLICATION BY RONALD S. BROKING FOR
A PERMIT TO CARRY A HANDGUN.

Superior Court of New Jersey
Appellate Division

Submitted October 24, 2005—Decided November 14, 2005.

Before Judges ALLEY, C.S. FISHER and YANNOTTI.

*Evan F. Nappen,* attorney for appellant Ronald S. Broking.

*Luis A. Valentin,* Monmouth County Prosecutor, attorney for respondent State of New Jersey (*Mark P. Stalford,* Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

YANNOTTI, J.A.D.

Ronald S. Broking appeals from an order entered in the Law Division on February 25, 2005, which affirmed a determination of the Superintendent of State Police (Superintendent) denying Broking's application pursuant to *N.J.S.A.* 2C:39-6(*l*) for a permit to carry a handgun. We reverse.

The facts are relatively straightforward. Broking was a law enforcement officer and he was a member of the Police and Firemen's Retirement System (PFRS). Broking filed an application in or around January 2004 for accidental disability retirement pursuant to *N.J.S.A.* 43:16A-7(1). That statute provides that a member of the PFRS may be retired on an "accidental disability retirement allowance," provided that the medical board certifies, after an examination, that the member

> is permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties and that such disability was not the result of the member's willful negligence and that such member is mentally or physically incapacitated for the performance of his usual duty and of any other available duty in the department which his employer is willing to assign to him.
>
> [*Ibid.*]

The member's application must be approved by the Board of Trustees (Board) which is vested with authority for the "proper operation" of the PFRS. *N.J.S.A.* 43:16A-13(1). The Board's regulation provides in pertinent part that, "A member's retirement application becomes effective on the first of the month following receipt of the application unless a future date is requested." *N.J.A.C.* 17:4-6.1(a).

The Board approved Broking's application on August 9, 2004 and in a letter dated August 10, 2004, advised Broking that his application was approved effective February 1, 2004. On Septem-

ber 12, 2004, Broking filed an application with the Superintendent pursuant to *N.J.S.A.* 2C:39–6(*l*)(1) for a permit to carry a handgun.

The Superintendent informed Broking by letter dated January 24, 2005 that his application was denied because Broking retired as of February 1, 2004 and he failed to file the application "within six months after retirement," as required by *N.J.S.A.* 2C:39–6(1)(1). The letter noted that Broking could apply for a permit to carry a handgun pursuant to *N.J.S.A.* 2C:58–4, by submitting an application with the chief law enforcement officer of the municipality in which he resides.

Broking appealed the Superintendent's determination to the Superior Court pursuant to *N.J.S.A.* 2C:39–6(*l*)(5). The Law Division judge upheld the Superintendent's decision. Ruling from the bench, the judge noted that *N.J.S.A.* 2C:39–6(1)(1) provides that a retired law enforcement officer "shall" make application in writing "within six months after retirement." The judge determined that the statute did not confer upon the court any discretion to alter the timeframe within which the application must be filed. The judge found that because Broking had not filed the application within six months of the effective date of his retirement on February 1, 2004, his application was untimely.

On this appeal, Broking argues that the six month limitations period in *N.J.S.A.* 2C:39–6(*l*)(1) began to run when he was informed that the Board had approved his application for retirement, rather than the February 1, 2004 effective retirement date. Broking contends that, until the Board acted on August 9, 2004, he was still an active member of the PFRS and therefore was not "retired." Broking alternatively argues that, if he is deemed to have retired on February 1, 2004, the deadline for filing the permit application should be tolled until the date when the Board approved his retirement.

■ Our primary goal in interpreting a statute is to discern and give effect to the legislative intent in light of the language

used and the objects sought to be achieved by enactment of the statute. *Burns v. Belafsky,* 166 *N.J.* 466, 473, 766 *A.*2d 1095 (2001) (citing *State v. Hoffman,* 149 *N.J.* 564, 578, 695 *A.*2d 236 (1997)). The search for legislative intent begins with the language of statute. *First Resolution Inv. v. Seker,* 171 *N.J.* 502, 511, 795 *A.*2d 868 (2002). "If the statute is clear and unambiguous on its face and admits of only one interpretation, we need delve no deeper than the act's literal terms to divine the Legislature's intent." *State v. Thomas,* 166 *N.J.* 560, 567, 767 *A.*2d 459 (2001)(quoting *State v. Butler,* 89 *N.J.* 220, 226, 445 *A.*2d 399 (1982)). However, if the language of the statute is ambiguous, we consider extrinsic sources such as the statutory context in discerning the correct meaning of the statute. *Hoffman, supra,* 149 *N.J.* at 578, 695 *A.*2d 236 (citing *Cedar Cove, Inc. v. Stanzione,* 122 *N.J.* 202, 213, 584 *A.*2d 784 (1991)).

We therefore begin our analysis with a review of the statutes under which Broking sought the permit to carry a handgun. *N.J.S.A.* 2C:39–5(b) states that a person who knowingly possesses a handgun without having first obtained a permit to carry the same is guilty of a crime of the third degree. However, *N.J.S.A.* 2C:39–6(*l*) provides in pertinent part that:

> nothing in subsection b. of [*N.J.S.A.*] 2C:39–5 shall be construed to prevent a law enforcement officer who retired in good standing, including a retirement because of disability pursuant to [*N.J.S.A.* 43:16A–6, *N.J.S.A.* 43:16A–7, *N.J.S.A.* 43:16A–6.1], or any substantially similar statute governing the disability retirement of federal law enforcement officers, provided the officer was a regularly employed, full-time law enforcement officer for an aggregate of five or more years prior to his disability retirement and further provided that the disability which constituted the basis for the officer's retirement did not involve a certification that the officer was mentally incapacitated for the performance of his usual law enforcement duties and any other available duty in the department which his employer was willing to assign to him or does not subject that retired officer to any of the disabilities set forth in subsection c. of [*N.J.S.A.*] 2C:58–3 which would disqualify the retired officer from possessing or carrying a firearm, who semi-annually qualifies in the use of the handgun he is permitted to carry in accordance with the requirements and procedures established by the Attorney General pursuant to subsection j. of this section and pays the actual costs associated with those semi-annual qualifications, who is less than 70 years of age, and who was regularly employed as a full-time member of the State Police; a full-time member of an interstate police force;

[or] a full-time member of a county or municipal police department in this State. . . .

In order to obtain a permit to carry a handgun, the "retired law enforcement officer, within six months after retirement, shall make application in writing to the Superintendent of State Police for approval to carry a handgun for one year." *N.J.S.A.* 2C:39–6($l$)(1). If approved, the application is subject to renewal on an annual basis. *Ibid.*

Upon the receipt of an application, the Superintendent is required to request a "verification of service from the chief law enforcement officer of the organization in which the retired officer was last regularly employed as a full-time law enforcement officer prior to retiring." *N.J.S.A.* 2C:39–6($l$)(2). The verification must include:

(a) [t]he name and address of the retired officer;

(b) [t]he date that the retired officer was hired and the date that the officer retired;

(c) [a] list of all handguns known to be registered to that officer;

(d) [a] statement that, to the reasonable knowledge of the chief law enforcement officer, the retired officer is not subject to any of the restrictions set forth in [*N.J.S.A.* 2C:58–3(c)]; and

(e) [a] statement that the officer retired in good standing.

[*Ibid.*]

If the Superintendent approves the application, he notifies the chief law enforcement officer in the municipality where the "retired officer" resides. *N.J.S.A.* 2C:39–6($l$)(3). The Superintendent issues to the "approved retired officer" an identification card which allows the "retired officer" to carry a handgun in accordance with the statute. *N.J.S.A.* 2C:39–6($l$)(4). The "retired officer" must carry the card when he is carrying a handgun, and the officer must produce the card for review "on the demand of any law enforcement officer or authority." *Ibid.*

■ Our consideration of the particular statutory language at issue here, the statute as a whole, and the related retirement statutes leads us to the conclusion that the six month period under *N.J.S.A.* 2C:39–6($l$) began to run when the Board approved the

application. We recognize that the Board approved Broking's retirement application effective February 1, 2004 and Broking was considered to have retired on that date for pension purposes. However, the limitations period under *N.J.S.A.* 2C:39–6(*l*)(1) did not begin to run on February 1, 2004 because as of that date the Board had not yet approved Broking's application for retirement.

The statute authorizes the filing of an application by a law enforcement officer who is "retired" and an officer whose application for retirement is pending is not "retired." Because Broking did not request an effective retirement date subsequent to the Board's approval, the date his application was approved must be considered the date of his "retirement" for purposes of commencement of the limitation period in *N.J.S.A.* 2C:39–6(1)(1). That is the date when Broking became a "retired" law enforcement officer. *Ibid.*

The provisions of *N.J.S.A.* 2C:39–6(*l*)(2) under which the Superintendent must obtain a "verification of service" confirm that the Legislature did not intend to require a law enforcement officer to submit the application before the officer's retirement has been approved. The "verification of service" must state, among other things, the date when the officer "retired." *N.J.S.A.* 2C:39–6(*l*)(2)(b). Clearly, a verification of the date the officer "retired" cannot be provided until such time as the officer's application for retirement has been approved. The verification also must state that the officer "retired in good standing" as required by *N.J.S.A.* 2C:39–6(*l*)(2)(e). Such a statement cannot be made if the officer's application for retirement is still pending.

Our view that Broking's "retirement" for purposes *N.J.S.A.* 2C:39–6(*l*)(1) did not occur until his application for retirement was approved is consistent with the provisions of the statutes governing the PFRS. Under *N.J.S.A.* 43:16A–1(16), the term "retirement" is defined to mean "the termination of the member's active service with a retirement allowance granted and paid under the provisions of [*N.J.S.A.* 43:16A–1 to –68]." Therefore, a PFRS

member cannot retire until the Board grants the retirement allowance and authorizes its payment.

Although the Board may choose to make the effective date of retirement retroactive for pension purposes, the six month period under *N.J.S.A.* 2C:39–6(*l*)(1) for the filing of the gun permit application does not begin to run from the retroactive retirement date because, until the member's application is approved, the law enforcement officer is merely a person seeking retirement. He is not yet a "retired law enforcement officer." *Ibid.*

■ The State argues that Broking was required to file his gun permit application within six months after February 1, 2004. Under the State's interpretation of *N.J.S.A.* 2C:39–6(*l*)(1), Broking would have been required to file his permit application even though his retirement application was merely under review by the medical board and the PFRS Board. Moreover, Broking's application would have been due no later than August 1, 2004 even though his retirement was not actually approved until after that date. Broking would be barred from seeking the permit under *N.J.S.A.* 2C:39–6(*l*) before he was even informed that his retirement had been approved. We are required to construe statutes to avoid such "absurd results." *In re Expungement Application of P.A.F.,* 176 *N.J.* 218, 222, 822 *A.*2d 572 (2003)(citing *State v. Haliski,* 140 *N.J.* 1, 9, 656 *A.*2d 1246 (1995)).

Reversed and remanded to the Superintendent for consideration of the application on the merits.