28 A.3d 831 (2011)
422 N.J. Super. 301
MIDLAND FUNDING, L.L.C., Plaintiff-Appellant,
v.
Rosa GIAMBANCO, Defendant-Respondent.
No. A-1651-09T3.
Superior Court of New Jersey, Appellate Division.
Argued December 8, 2010.[1]
Decided October 3, 2011.
*833 Lawrence J. McDermott, Jr., Parsippany, argued the cause for appellant (Pressler and Pressler, L.L.P., attorneys; Mr. McDermott, on the brief).
Respondent has not filed a brief.
David McMillin argued the cause for pro se amicus curiae Legal Services of New Jersey, Inc.
Before Judges CUFF, FISHER and SAPP-PETERSON.
The opinion of the court was delivered by SAPP-PETERSON, J.A.D.
In this appeal we are asked to review a consent judgment in which defendant waived notice of an application for issuance of a wage execution. The effect of the waiver permits issuance of the writ upon the filing of a certification that defendant has defaulted on the terms and conditions of the consent judgment. The trial court struck the provisions as contrary to public policy as set forth in N.J.S.A. 2A:17-50(a) and Rule 4:59-1(d). We hold that inclusion of a provision in a consent judgment in which the judgment-debtor waives the judgment-creditor's compliance with the requisite notice provisions contained in N.J.S.A. 2A:17-50(a) and Rule *834 4:59-1(d) is not contrary to public policy, provided the judgment-debtor's waiver is knowing and informed. We hold further that when a proposed consent judgment does not contain sufficient information that satisfies the notice requirements of Rule 4:59-1(d), in order to ensure that the judgment-debtor's waiver is knowing and informed, a court may reject the proposed consent judgment. The court may not, however, unilaterally strike the offending provisions and then approve the judgment as altered, unless the parties agree to the court's proposed changes. In the absence of such an agreement, the court should restore the matter to its pre-settlement status.
Defendant defaulted on a credit card obligation. The parties reached a settlement that called for defendant to make monthly $50 payments to retire the debt. Defendant breached the terms of the settlement, and plaintiff commenced an action in the Special Civil Part. The litigation was resolved by formal settlement, memorialized in a proposed consent judgment order. The terms set forth in the proposed order were the same as those to which defendant had agreed in the pre-suit settlement. The order was captioned: "Consent Judgment and Order Conditionally Withholding Wage Execution." The order entered judgment in favor of plaintiff for $3,018.12 and detailed the amount of the monthly payment defendant would make and the date each month on which payment would be due until judgment was satisfied in full. The order also advised defendant that plaintiff had the right to docket the judgment in Superior Court. Defendant signed the consent judgment, which plaintiff's counsel then presented to the court for approval. The trial court struck the following provisions:
In the event that the Defendant(s) shall default under the terms of this order, a wage execution shall issue without further notice to the said Defendant(s[)] upon the filing of a certification of default by Attorneys for Plaintiff.
....
I understand that a wage execution shall issue on my salary earnings without further notice to me, if payments are not made as set forth above.
The court entered the consent judgment as so modified. Plaintiff subsequently filed a motion to vacate the altered order and sought reinstatement of the provision permitting wage execution without notice to defendant. The court denied the motion without prejudice, directing plaintiff to brief the issue. Defendant did not participate in these proceedings. The court, however, invited Legal Services of New Jersey ("Legal Services") to participate as amicus curiae "since this case involves the public interest in the recurring issue of notice of wage executions." Legal Services accepted the invitation and the court entered its appearance as amicus. Following oral argument, the court issued a lengthy written opinion. The court acknowledged that neither Rule 4:59-1(d) nor N.J.S.A. 2A:17-50(a) "expressly prohibit a contract waiving a debtor's right to prior notice[,]" but it referenced the fact that Rule 4:59-1(d) was amended in 1990 to require notice before wage executions issue, as indicative of the fact that notice to the judgment-debtor is "not an empty, technical, bureaucratic requirement." The court then addressed the salient purposes underlying the notice requirement:
Prior notice informs the judgment debtor not only (1) that a wage execution application has been made, but (2) the amount which is permitted to be deducted, (3) the protections against discharges, discipline, or discrimination by an employer because of wage garnishment, (4) the process by which to oppose the *835 order and request a hearing prior to wage garnishment, and (5) the process by which defendant can object to the wage execution or apply for a reduction in the amount withheld after the wage execution has been issued. R. 4:59-1(d) and (h), and Appendix XI-I and XI-J.
The court then addressed the deficiencies in waiving the notice requirement:
The settlement agreement before the [c]ourt prevents the defendant from receiving this vital information before the wage execution. Thus, she would completely lose her right to object to the garnishment before it starts. She would also have no prior information as to the statutory limitations on garnishment set forth above. As stated in the initial portion of this opinion, plaintiff's practice is that the garnishment would be initiated by certification and order signed by the court ex parte. The garnishment would be in process before the defendant ever received notice of it. Thus, the first word of the garnishment might well be the actual diminution in wages. That is also when she would first learn of her right to object, the total due, the limits on garnishment and her protection from discharge by her employer.
Moreover, although the employer is required by the garnishment order to provide a copy of the ex parte garnishment order to the defendant, a plaintiff's counsel cannot monitor compliance with this requirement. Thus, deductions may well occur before defendants ever know their rights as set forth in the order, as mandated by Appendix XI-J to the Court Rules. Further, the lack of knowledge extends not merely to the pre-garnishment right to object to the garnishment but also to the limit on how much can be taken out. As noted above, garnishment is limited to the lesser of [ten percent] of the gross weekly pay, [twenty-five percent] of disposable earnings, or the amount by which the disposable weekly earnings exceed $217.50 per week (in 2009). The defendant will not know these limits if the order is not given to her. Nor, critically, will she know that the employer cannot fire her because of the garnishment.
Further, the garnishment order, even if actually given to a defendant, will also be the first time at which the defendant would become aware of the total amount due which might include interest and court fees. See R. 4:59-1(h); Appendix XI-J. Given that all the rights described are substantial protections for a wage earner, and there is no guarantee the employer will necessarily provide the order to the defendant before money is taken out, it is clear that a working person and her family may be significantly distressed before she is aware of what is happening to her, her rights to protest and her protection against discharge.
In addition, the ex parte procedure makes no allowance for error. If a check gets lost in the mail or misplaced by a plaintiff or not credited for some reason, garnishment can commence or continue without notice. A defendant counting on her wages could be severely harmed by a simple mistake. Her wages would go down, even though she had mailed out a check or even if one had been deposited, but not credited to her.
The court expressed that plaintiff would suffer no prejudice by complying with the notice requirements. It also rejected plaintiff's expansive reading of the statutory language in N.J.S.A. 2A:17-50(a), "unless the court otherwise orders." Instead, the court stated the Legislature intended that there be "a reasoned basis for an *836 exception to the notice requirement" in recognition that there "might be unusual situations requiring a different approach, such as, for example, an allegation that an employer and employee might conspire to thwart the garnishment by paying an employee `off the books.'" The court therefore concluded that the waiver provision contained in plaintiff's consent judgment is void against public policy, as set forth in Rule 4:59-1(d) and N.J.S.A. 2A:17-50(a).
On appeal, plaintiff raises the following points for our consideration:
POINT I
THE COURT ERRED AS A MATTER OF LAW IN HOLDING THAT A PROVISION IN A CONSENT JUDGMENT OR ORDER ALLOWING FOR THE ISSUANCE OF A WAGE GARNISHMENT "WITHOUT FURTHER NOTICE" WAS VOID AS AGAINST THE PUBLIC POLICY OF THE STATE OF NEW JERSEY.
POINT II
A JUDGMENT[-]DEBTOR MAY WAIVE PRIOR NOTICE OF A WAGE GARNISHMENT.
POINT III
THE COURT BELOW ERRED IN SEVERING THE ALLEGEDLY VOID WAIVER OF NOTICE PROVISION FROM THE PARTIES' SETTLEMENT.

I.
The requirement that there be notice to judgment-debtors is provided both by statute and court rule. N.J.S.A. 2A:17-50(a) provides in pertinent part:
When a judgment has been recovered in the Superior Court, and where any ... debts ... are due and owing to the judgment[-] debtor, or thereafter become due and owing to him, to the amount of $48.00 or more a week, the judgment[-]creditor may, on notice to the judgment[-]debtor unless the court otherwise orders, apply to the court in which the judgment was recovered, or to the court having jurisdiction of the same, and upon satisfactory proofs, by affidavit or otherwise, of such facts, the court shall grant an order directing that an execution issue against the wages, debts, earnings, salary, income from trust funds, or profits of the judgment[-]debtor. (Emphasis added).
Rule 4:59-1(d) details the contents of notice to the judgment-debtor:
Proceedings for the issuance of an execution against the wages, debts, earnings, salary, income from trust funds or profits of a judgment-debtor shall comply with the requirements of paragraph (a) of this rule and shall be on notice to the debtor. The notice of wage execution shall state (1) that the application will be made for an order directing a wage execution to be served on the defendant's named employer, (2) the limitations... on the amount of defendant's salary which may be levied upon, (3) that defendant may notify the court and the plaintiff in writing within ten days after service of the notice of reasons why the order should not be entered, (4) if defendant so notifies the clerk, the application will be set down for hearing of which the parties will receive notice as to time and place, and if defendant fails to give such notice, the order will be entered as of course, and (5) that defendant may object to the wage execution or apply for a reduction in the amount withheld at any time after the order is issued by filing a written statement of the objection or reasons for a reduction with the clerk and sending a copy to the creditor's attorney or directly to the creditor if there is no attorney, and that a hearing will be held within *837 seven days after filing the objection or application for a reduction.... The writ shall include a provision directing the employer immediately to give the judgment-debtor a copy thereof and it shall also include a provision that the judgment-debtor may, at any time, notify the clerk and the judgment-creditor in writing of reasons why the levy should be reduced or discontinued. If an objection from the judgment-debtor is received by the clerk after a wage execution has issued, all moneys remitted by the employer shall be held until further order of the court and the matter shall be set down for a hearing to be held within seven days of receipt of the objection. (Emphasis added).
We first begin our discussion by reiterating the well-settled principle that parties, by agreement, may waive statutory and constitutional rights. LaManna v. Proformance Ins. Co., 184 N.J. 214, 226, 876 A.2d 785 (2005) (noting that "just as the parties in a civil action may waive their right to a jury trial, they may waive their right to a jury verdict of five-sixths majority"); Leodori v. CIGNA Corp., 175 N.J. 293, 302, 814 A.2d 1098 (holding to be enforceable, under contract-law principles, a waiver-of-rights provision, in which an employee agrees to arbitrate disputes with the employer, "must reflect that the employee has agreed clearly and unambiguously to arbitrate the disputed claim"), cert. denied, 540 U.S. 938, 124 S.Ct. 74, 157 L.Ed.2d 250 (2003); Van Duren v. Rzasa-Ormes, 394 N.J.Super 254, 257, 926 A.2d 372 (App.Div.2007) (upholding the enforceability of an agreement that precluded judicial review of an arbitration award beyond the trial court level), aff'd, 195 N.J. 230, 948 A.2d 1285 (2008). Second, settlement agreements have long been favored for disposition of disputes between parties and should be enforced to the fullest extent. Judson v. Peoples Bank & Trust Co., 25 N.J. 17, 35, 134 A.2d 761 (1957). "Settlements permit parties to resolve disputes on mutually acceptable terms rather than exposing themselves to the adverse judgment of a court. Settlements also save parties litigation expenses and facilitate the administration of the courts by conserving judicial resources." Morris Cnty. Fair Hous. Council v. Boonton Twp., 197 N.J.Super 359, 366, 484 A.2d 1302 (Law Div.1984). Thus, reducing a settlement to a consent judgment offends no constitutional or statutory prohibition.
A consent judgment is authorized by Rule 4:42-1 and has been characterized as being
both a contract and a judgment[;] it is not strictly a judicial decree, but rather in the nature of a contract entered into with the solemn sanction of the court. A consent judgment has been defined as an agreement of the parties under the sanction of the court as to what the decision shall be. Fidelity Union Trust Co. v. Union Cemetery Ass'n, 136 N.J. Eq. 15, 25-26 [40 A.2d 205] (Ch.1944), aff'd orb. 137 N.J. Eq. 455 [45 A.2d 670] (E. & A.1946).
[Stonehurst at Freehold v. Township Comm. of Freehold, 139 N.J.Super. 311, 313, 353 A.2d 560 (Law Div.1976).]
"Thus, for a consent judgment to be valid, like a contract, the parties' consent must be knowing and informed." Cmty. Realty Mgmt., Inc. v. Harris, 155 N.J. 212, 226, 714 A.2d 282 (1998) (citing Johnson & Johnson v. Charmley Drug Co., 11 N.J. 526, 538-39, 95 A.2d 391 (1953)). "There must be the proverbial `meeting of the minds.'" Ibid.
The deficiency in the consent judgment here is the absence of notice to the judgment-debtor of important rights and the consequences of a waiver, deficiencies we believe can be addressed through a *838 more detailed consent judgment that incorporates the provisions of Rule 4:59-1(d), which the judgment-debtor is waiving. We disagree that an employer's obligation under Rule 4:59-1(d) to provide the judgment-debtor with a copy of the writ after it has been served upon the employer is sufficient to resolve the deficiencies in the consent judgment that was presented to the trial court here, for the reasons expressed by the trial court.
We agree, as the trial court found, that there is a parallel between judgment-debtors who enter into consent judgments as proffered by plaintiff and the consumers about whom the Court was concerned in Muhammad v. County Bank of Rehoboth Beach, 189 N.J. 1, 912 A.2d 88 (2006), cert. denied, 549 U.S. 1338, 127 S.Ct. 2032, 167 L.Ed.2d 763 (2007). There, the Court struck a provision contained in a consumer short-term loan agreement, known as a payday loan, prohibiting class-wide arbitration of disputes. Id. at 22, 912 A.2d 88. The Court noted that the economic vulnerability of the class of persons seeking such loans, compels their acquiescence to loans bearing exorbitant interest rates, making them less likely to pursue individual arbitration of any dispute. Id. at 19 n. 4, 912 A.2d 88. In the present matter, under the proposed consent judgment, the judgment-debtor, who may already be strapped for cash, may precipitously agree to the consent judgment without knowing that he or she may seek a reduction in the amount of wage execution.
There is also a parallel to payees seeking a transfer of a portion or all of their structured settlements. In re Transfer of Structured Settlement Rights by Spinelli, 353 N.J.Super. 459, 803 A.2d 172 (Law Div.2002), is illustrative. There, the Law Division judge noted the "paternalistic function" of N.J.S.A. 2A:16-66, which requires judicial approval of a present transfer of a payee's future structured settlement as part of the Legislature's goal to prevent exploitation of payees who may improvidently enter into such agreements because of the need for cash and thereby relinquish the benefits of structured settlements. Id. at 464-65, 803 A.2d 172. Judgment-debtors experiencing similar financial hardships may view a chance to resolve the debt through payments paid over a period of time as the better course of action rather than risking a levy upon assets for the full amount of a judgment without knowing that a particular hardship may, following a hearing, result in a reduction of the amount of wages subject to garnishment.
In short, we view the consent judgment here in the same manner the Court viewed the consent judgment that stayed the warrant of removal of the tenant in Harris. There, the Court recognized the validity of consent judgments, but found the particular consent judgment problematic and stated that "a person should be able to read a judgment required by Rule 4:42-1 and glean what relief was granted, thereby avoiding future disputes." Id. at 228, 714 A.2d 282 (citing J.S. v. D.M., 285 N.J.Super 498, 500, 667 A.2d 394 (App.Div.1995)). The Court also found the record did not support the trial court's conclusion that the tenant understood the warrant of removal would be executed at the end of the six months, even if she complied with the terms and conditions of the stay. Harris, supra, 155 N.J. at 228, 714 A.2d 282. Moreover, the Court observed "the judge never explained to [the tenant], or any other pro se tenant, the legal effect of a consent judgment, hardship stay, or warrant for removal." Id. at 238, 714 A.2d 282.
We recognize Harris arose in the context of an eviction proceeding and therefore was subject to New Jersey's policy *839 favoring tenants over landlords in those situations where a question arises as to the validity of a lease agreement. Id. at 226-27, 714 A.2d 282 (citing Carteret Props. v. Variety Donuts, Inc., 49 N.J. 116, 127, 228 A.2d 674 (1967) (citations omitted)). Because both our court rules and the Legislature expressly call for notice to the judgment-debtor prior to the issuance of a wage execution order, similar safeguards must be in place to ensure that a wage execution consent judgment, waiving the judgment-creditor's compliance with its notice obligations, is entered with the judgment-debtor's full knowledge and understanding of the consequences of the waiver.
"A consent judgment has equal adjudicative effect as one entered after trial or other judicial determination." Id. at 226, 714 A.2d 282 (citing Pope v. Kingsley, 40 N.J. 168, 173, 191 A.2d 33 (1963)). Once entered, it may only be vacated in accordance with the standards outlined in Rule 4:50-1(a) through (f). Ibid. Therefore, a judgment-debtor's consent must be both knowing and informed. Ibid. The consent judgment here does not meet those standards. Consequently, the trial court did not err when it declined to accept the consent judgment for the entry of final judgment.
Once the court concluded, however, that the proposed consent judgment did not comport with the requirements of N.J.S.A. 2A:17-50(a) or Rule 4:59-1(d), its options were to reject the proposed consent judgment or, if the parties chose not to accept the court's proposed changes, return the matter to its pre-settlement status. When plaintiff reached the pre-litigation settlement with defendant, both parties benefited by the expeditious resolution of the matter without incurring the additional expense that results when formal litigation is commenced. Plaintiff claims defendant breached the terms of the settlement, forcing plaintiff to commence formal legal action to resolve the dispute. The parties once again settled the matter and the proposed consent judgment contained the exact pre-litigation payment terms, thus affording defendant a second chance to make payments over time. Inclusion of the waiver of the wage execution notice requirements was likely intended to reduce additional litigation costs plaintiff would incur in the event of a subsequent breach of the agreement. The court's action in striking what it viewed as the offending provisions removed that apparent benefit to plaintiff. It was not the court's function to unilaterally "`make a better contract for the parties than they themselves have seen fit to enter into or to alter it for the benefit of one party and to the detriment of the other.'" Christafano v. N.J. Mfg. Ins. Co., 361 N.J.Super. 228, 237, 824 A.2d 1126 (App.Div.2003) (quoting Royal Ins. Co. v. Rutgers Cas. Ins. Co., 271 N.J.Super. 409, 416, 638 A.2d 924 (App.Div.1994)). Therefore, the court erred when it unilaterally struck the offending provisions and entered the consent judgment as altered.

II.
We briefly address a number of additional arguments which, although not necessary in reaching our decision, nonetheless warrant comment. Specifically, we address: (1) the factual findings of the court; (2) whether the consent judgment is a contract of adhesion; and (3) plaintiff's contention that "[t]he public policy of New Jersey is satisfied when a debtor is advised that an objection may be made after garnishment[.]"
Because the court did not conduct a plenary hearing and defendant did not participate in the proceedings, the court's factual assumptions that defendant may not *840 have had the benefit of counsel at the time she signed the consent judgment, that she may have been compelled by her circumstances to execute the order, or that she exalted "hope" over reality are unsupported by the record and are therefore not entitled to any deference. Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974). In reaching our decision, we do so based upon our determination that the language contained in the proposed consent judgment does not fully inform defendant of the notice provisions contained in N.J.S.A. 2A:17-50(a) and Rule 4:59-1(d), which defendant waived by executing the consent judgment.
Amicus, Legal Services, argues that the proposed consent judgment should be viewed as a contract of adhesion. We find no basis to do so. First, as we have discussed, there is no public policy bar to resolving disputes through settlement and the entry of consent judgments. Second, there are no facts in the record from which it could reasonably be concluded that defendant executed the consent judgment on a take-it-or-leave-it basis, there was unequal bargaining power, or that economic compulsion influenced defendant's decision to execute the consent judgment, factors courts typically consider in determining whether a particular contract is one of adhesion. See Delta Funding Corp. v. Harris, 189 N.J. 28, 40, 912 A.2d 104 (2006) (citing Rudbart v. N. Jersey Dist. Water Supply Comm'n, 127 N.J. 344, 356, 605 A.2d 681, cert. denied, 506 U.S. 871, 113 S.Ct. 203, 121 L.Ed.2d 145 (1992)).
The fact that Rule 4:59-1(d) now provides that the writ "shall include a provision directing the employer immediately to give the judgment-debtor a copy [of the writ] and it shall also include a provision that the judgment-debtor may, at any time, notify the clerk and the judgment-creditor in writing of reasons why the levy should be reduced or discontinued," does not minimize the necessity for an informed and knowing waiver of the notice requirements by the judgment-debtor before entering into a consent judgment. In exchange for the opportunity to make payments over time, the judgment-debtor agrees that in the event of a breach of the consent judgment, a wage execution may issue without further notice upon the filing of a certification of default with the court.
"Due process is implicated ... because a wage garnishment affects defendant's interest by depriving [her] of the continued use of some portion of [her] property." First Resolution Inv. Corp. v. Seker, 171 N.J. 502, 512, 795 A.2d 868 (2002) (citing Twp. of Montville v. Block 69, Lot 10, 74 N.J. 1, 8, 376 A.2d 909 (1977)). Notice and an opportunity to be heard are essential components of due process. Mettinger v. Globe Slicing Mach. Co., 153 N.J. 371, 389, 709 A.2d 779 (1998) (citing Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 656-57, 94 L.Ed. 865, 873 (1950)). If the right to notice and an opportunity to be heard are to be waived then the waiver must be "a voluntary, clear and decisive act, implying an election to forego some advantage which the waiving party might have insisted on." Deerhurst Estates v. Meadow Homes, Inc., 64 N.J.Super. 134, 145, 165 A.2d 543 (App.Div.1960), certif. denied, 34 N.J. 66, 167 A.2d 55 (1961). This is not accomplished by delegating that task to the employer, whose post-garnishment notice to a judgment-debtor is an added benefit rather than a substitute or alternative to the pre-garnishment notice requirements. Seker, supra, 171 N.J. at 515, 795 A.2d 868 (noting the failure to include language advising the judgment-debtor of the continuing right to object to the wage execution did not render *841 Appendix Form XI-I constitutionally infirm but finding its inclusion in the notice an added remedy).[2] Thus, the consent judgment waiving notice must reflect the judgment-debtor's full knowledge and understanding of the waiver. The consent judgment here failed to reflect that defendant was fully informed of "what relief was granted" by virtue of the waiver.
Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] Defendant filed for bankruptcy. On August 25, 2011, we received a copy of the July 18, 2011 United States Bankruptcy Court order lifting the automatic stay on a limited basis to allow the appeal to conclude.
[2] A 2004 amendment to Rule 4:59-1(d) added the recommended language.