**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1450-22

PHILIP DATTOLO,

    Plaintiff-Appellant,

v.

EMC SQUARED, LLC and
EDWARD T. MORGAN,

    Defendants-Respondents.

_____

Submitted January 30, 2024 – Decided March 28, 2024

Before Judges Mayer and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-0369-20.

Joseph J. Fritzen, attorney for appellant.

Oller and Breslin, LLC, attorneys for respondents (John Michael Breslin, on the brief).

PER CURIAM

    Plaintiff Philip Dattolo appeals from a December 9, 2022 final judgment entered solely against defendant EMC Squared LLC, awarding him $29,603.95

in damages for breach of contract and $15,000 in attorney's fees. We affirm the judgment as to damages, but vacate and remand the awarded attorney's fees.

The facts are gleaned from the trial record. On October 23, 2018, Dattolo and defendant Edward Morgan, on behalf of EMC (collectively defendants), executed a written contract. The contract called for EMC to construct a new single-family home in Boonton, New Jersey. Morgan was the sole member of EMC and performed the work under the contract.

In March 2019, EMC presented Dattolo with a list of extras and sought additional payment. Dattolo accepted some of the items and agreed to pay a lesser amount. Toward the end of the job, EMC created a change order for additional work. The parties never signed the change order.

In January 2020, Morgan advised Dattolo that EMC was unable to continue the work. Further, Morgan stated the home passed final inspections. EMC provided Dattolo a final invoice with credits for unfinished items and items paid by Dattolo. Dattolo responded that he was unwilling to pay "one additional cent." Dattolo asserted there were numerous issues, and it was going to cost him thousands of dollars to correct EMC's work.

A-1450-22

On February 14, 2020, Dattolo filed a five-count complaint against EMC and Morgan. Dattolo alleged: (1) breach of contract; (2) unjust enrichment; (3) breach of the implied covenant of good faith and fair dealing; (4) common law fraud; and (5) violation of the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -228, for failure to comply with Home Improvement Practices (HIP) regulations, N.J.A.C. 13:45A-16.1 to -16.2.[1]

Defendants filed an answer, denying all allegations and asserting various defenses and a counterclaim. In the counterclaim, defendants alleged Dattolo "breached the contract by failing to pay [what wa]s due and owing." Dattolo filed an answer to the counterclaim with affirmative defenses.

The judge held a two-day bench trial on December 5 and 6, 2022. As relevant here, and in part, Dattolo urged EMC violated the CFA/HIP because EMC failed to provide him a change order that should have been signed by all parties. As a result of this failure Dattolo sought $30,903.95[2] in damages to be

---

[1] The parties do not dispute the application of the CFA/HIP regulation to their transaction.

[2] On the first day of trial Dattolo's counsel advised the court "the ascertainable loss is . . . $30,000, which I submit should be trebled plus attorney's fees and

A-1450-22

trebled, and attorney's fees and costs under the CFA/HIP. He sought to impose joint and several liability on EMC and Morgan

At the conclusion of trial, the judge determined: (1) Dattolo failed to prove Morgan was personally liable and dismissed Morgan from the matter; (2) defendants' counterclaim was dismissed because defendants "walked off the job"; (3) EMC was obligated to pay to Dattolo the amount of $29,603.95 for breach of contract; (4) there were violations of the CFA because the law required written contracts and change orders; (5) despite the CFA violations, there were no "ascertainable costs directly related to the absence of a change order"; and (6) EMC violated the CFA, "particularly the change orders," and, even in the absence of finding an ascertainable loss, he could award counsel fees and was "prepared to award some counsel fees."

The judge instructed Dattolo's counsel to submit a form of final judgment, providing for, but leaving blank, the amount for attorney's fees and costs. The judge requested Dattolo's counsel submit an affidavit of services. On December 7, 2022, counsel submitted a form of final judgment and an

_____

costs." On the second day of trial Dattolo's counsel advised the court he thought "the appropriate judgment is trebling . . . $30,000 in actual costs."

4

affidavit of services requesting $25,472.50 in fees and $2,360.81 in costs. In the cover letter, counsel advised that he included "Morgan, as it would appear that . . . Morgan would remain individually liable for the attorney fees due to consumer fraud violations under [Allen[3]] notwithstanding that [Dattolo] did not establish an ascertainable loss."

On the same day, defendants' counsel submitted a letter brief. He advised that he "ha[d] no issue with the amount [of fees and costs] charged." However, he "t[ook] issue with [Dattolo's counsel] attempting to enter a judgment against [Morgan] individually for the attorney's fees and costs." Defendants' counsel contended the judge "dismissed [Morgan] as an individual from the case," and Allen "d[id] not hold parties dismissed from a case can be held responsible for attorney's fees and costs." Defendants' counsel requested the judge delete portions of the proposed final judgment that imposed individual liability on Morgan for attorney's fees and costs.

On December 9, 2022, the judge executed the final judgment on the breach of contract claim "in the sum of $29,603.95 in favor of [Dattolo], and against [EMC]." Also, without hearing further from the parties, the judge

---

[3] Allen v. V.A. Bros., Inc., 208 N.J. 114, 131 (2011).

struck the language holding Morgan and EMC "jointly, severally and in the alternative" liable for Dattolo's attorney's fees and costs. The final judgment provided EMC, solely, was liable for Dattolo's attorney's fees and costs in the sum of $15,000. In explaining the awarded attorney's fees, the judge wrote on the final judgment "[t]he fees and costs submitted are granted in part. The court concludes the hourly rate and services rendered are reasonable and appropriate. The full amount sought ($25,472.50 and costs of $2360.81) are not awarded because the consumer fraud violation did not result in any ascertainable loss."

On appeal, Dattolo contends the judge erred: (1) in finding there was no ascertainable loss as a result of the admitted CFA violation and ample proof of actual financial loss; and (2) in reducing attorney's fees and declining to impose personal liability on Morgan for those fees.

Our review of a final determination made following a bench trial is "subject to a limited and well-established scope of review." Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011). We do not disturb a trial court's findings of fact unless "convinced that those findings and conclusions [are] 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'"

6                                                        A-1450-22

Greipenburg v. Twp. Of Ocean, 220 N.J. 239, 254 (2015) (quoting Rova Farms Resort v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)). A trial court's findings are "considered binding on appeal when supported by adequate, substantial and credible evidence." Rova Farms, 65 N.J. at 484. However, we review a trial court's interpretation of law de novo. Walid v. Yolanda for Irene Couture, Inc., 425 N.J. Super 171, 179 (App. Div. 2012).

The CFA's private cause of action "requires a plaintiff to prove three elements: '1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss.'" D'Agostino v. Maldonado, 216 N.J. 168, 184 (2013) (quoting Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009)).

The New Jersey Supreme Court has held "ascertainable loss" requires "that the plaintiff suffered an actual loss." Thiedemann v. Mercedes-Benz USA, LLC, 183 N.J. 234, 248 (2005). The loss "must be presented with some certainty demonstrating that it is capable of calculation." Ibid. The loss is not always equated "with one that is demonstrated by an immediate, out-of-pocket-expense." Bosland, 197 N.J. 558. "The CFA does not demand that a plaintiff necessarily point to an actually suffered loss or to an incurred loss, [it must point] to one that is 'ascertainable.'" Id. at 559. Indeed, "[a]n 'estimate of

7

damages, calculated within a reasonable degree of certainty' will suffice to demonstrate ascertainable loss." Thiedemann, 183 N.J. at 249 (quoting Cox v. Sears Roebuck & Co., 138 N.J. 2, 22 (1994)).  Nonetheless, a "plaintiff must suffer a definite, certain and measurable loss, rather than one that is merely theoretical." Bosland, 197 N.J. at 558 (citing Thiedemann, 183 N.J. at 248).

"In addition, the CFA requires a consumer to prove that the loss is attribut[ed] to the conduct that the CFA seeks to punish by including a limitation expressed as a causal link." Id. at 555.  "[A] plaintiff who cannot prove the causal link between the asserted regulatory violation and his [or her] loss cannot find relief within the CFA." Id. at 560.

Ordinarily, parties to a litigation must pay their own attorney's fees.

> Courts in New Jersey have traditionally adhered to the American Rule as the principle that governs attorneys' fees.  This guiding concept provides that, absent authorization by contract, statute or rule, each party to a litigation is responsible for the fees charged by his or her attorney.  Fees charged by one's own attorney, of course, must comply with our Rules of Professional Conduct, see RPC 1.5, and fees awarded by courts, regardless of their basis, are governed by principles of reasonableness, see R. 4:42-9; see, e.g., Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 386 (2009) (commenting upon reasonableness in contract-based fee award).
>
> [Walker v. Giuffre, 209 N.J. 124, 127 (2012).]

By statute a "consumer-fraud plaintiff can recover reasonable attorneys' fees, filing fees, and costs if that plaintiff can prove that the defendant committed an unlawful practice, even if the victim cannot show any ascertainable loss." Cox, 138 N.J. at 24-25; see N.J.S.A. 56:8-19. "[A] trial court should decrease the [amount] if the prevailing party achieved limited success in relation to the relief he [or she] had sought." Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 23 (2004).

"New Jersey law also permits parties to a contract to agree in advance to circumstances that may shift liability for attorneys' fees." McGuire v. Jersey City, 125 N.J. 310, 326 (1991) (citing Cohen v. Fair Lawn Dairies, Inc., 44 N.J. 450, 452 (1965)). "However, because such contractual provisions conflict with the common-law preference for avoiding awards of fees, they are strictly construed by our courts." Id. at 326-27. "[A] party seeking enforcement of a contractual provision for reasonable counsel fees must ordinarily establish the elements of his [or her] claim by plenary proof rather than by affidavit." Cohen, 44 N.J. at 452.

"[T]he first step in the fee-setting process is to determine the 'lodestar': the number of hours reasonably expended multiplied by a reasonable hourly

rate." Rendine v. Pantzer, 141 N.J. 292, 334-35 (1995). "[T]he trial court's determination of the lodestar amount is the most significant element in the award of a reasonable fee because that function requires the trial court to evaluate carefully and critically the aggregate hours and specific hourly rates advanced by counsel for the prevailing party to support the fee application." Ibid.

A form of judgment is submitted under Rule 4:42-1. The Rule provides:

> In lieu of settlement by motion or consent, the party proposing the form of judgment or order may forward the original thereof to the judge who heard the matter and shall serve a copy thereof on every other party . . . together with a notice advising that unless the judge and the proponent of the judgment or order are notified in writing of specific objections thereto within [five] days after such service, the judgment or order may be signed in the judge's discretion. If no such objection is timely made, the judge may forthwith sign the judgment or order. If objection is made, the matter may be listed for hearing in the discretion of the court.
>
> [R. 4:42-1(c).]

"Use of the five-day rule is predicated on a situation where there has been a court determination and to obviate the necessity of consent to the form of an order appropriately declared by the court." Jersey City v. Roosevelt Stadium Marina, 210 N.J. Super. 315, 331 (App. Div. 1986).

> If an objection is made, however, the matter may be listed for hearing in the court's discretion, and the parties then, of course, would have the opportunity to agree as to form and to submit to the court a revised form of judgment or order duly consented to. Alternatively, the court is free to enter the order without hearing and despite objections if, for example, it is satisfied that the form comports with its directives and the objections are frivolous or, should it be satisfied that the objections are meritorious, the court itself may amend the form of order as submitted.
>
> [Pressler & Verniero, Current N.J. Court Rules, cmt. 3 on R. 4:42-1 (2024).]

An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 572 (2002) (citation omitted). "Notice and an opportunity to be heard are essential components of due process." Midland Funding, LLC v. Giambanco, 422 N.J. Super. 301, 316 (App. Div. 2011).

When issuing an "opinion or memorandum decision, either written or oral, [the court shall] find the facts and state its conclusions of law thereon." R. 1:7-4(a). "Meaningful appellate review is inhibited unless the judge sets forth the reasons for his or her opinion. In the absence of reasons, we are left to conjecture as to what the judge may have had in mind." Salch v. Salch, 240

11

N.J. Super. 441, 443 (App. Div. 1990). "Naked conclusions do not satisfy the purpose of R[ule] 1:7-4." Curtis v. Finneran, 83 N.J. 563, 570 (1980).

Against these established principles we consider Dattolo's arguments that the judge erred in not finding an ascertainable loss because of the lack of a change order and in awarding $15,000 in attorney's fees and costs solely as to EMC.

We are satisfied the judge correctly determined Dattolo failed to establish an ascertainable loss as a result of the absence of a change order. The damage award was for:

> (1) excess [line of credit] interest after 240 days; (2) punch list after [c]ontractor quit; (3) glass door master bath; (4) sheetrock bottom stairs; (5) additional siding charges; (6) granite overage; (7) garage door; and (8) whole house generator.

The judge found none of

> these are ascertainable costs directly related to the absence of a change order. They are related to a breach of contract issues. It took longer. He did[ no]t provide the allotments for each item and he did[ no]t provide the generator.
>
> All of those are breach of contract issues. None of them are a result of a failure to provide a change order.

12

Dattolo argues "the CFA does not demand that a [p]laintiff necessarily point to an actually suffered loss or to an incurred loss, but only to one that is 'ascertainable,'" citing Bosland, 197 N.J. at 599. While Dattolo correctly cites the language in Bosland, he nonetheless must establish that he "suffer[ed] a definite, certain and measurable loss, rather than one that is merely theoretical." Id. at 558. He failed to establish any ascertainable loss from defendants' failure to present and have the parties sign a change order.

We note a few concerns related to the judge's handling of the award of Dattolo's attorney's fees. First, defendants' opposition to the form of judgment required the judge to determine, in the exercise of discretion, whether the matter should have been listed for a hearing. See R. 4:42-1(c). Since no explanation was given for why there was no hearing, the judge abused his discretion in this regard. Flagg, 171 N.J. at 572.

Second, Dattolo argues he was "entitled to attorney['s] fees and costs of suit as permitted by . . . paragraph 6.11 of the contract itself."[4] The Supreme

---

[4] The parties' contract is part of the appellate record. Paragraph 6.11 of the contract provides: "Attorney's fees: If either party to this contract defaults, the defaulting or non-prevailing party shall be liable to the other party for all

Court ordinarily requires plenary proof rather than an affidavit when a party seeks to enforce attorney's fees pursuant to a contractual provision. <u>Cohen</u>, 44 N.J. at 452. There was no hearing in this matter and the judge failed to explain why a plenary hearing was unnecessary prior to awarding attorney's fees and costs. Further, the judge did not provide any analysis of the parties' contractual provision. These failures violated <u>Rule</u> 1:7-4 which requires a "court [to] find the facts and state its conclusions of law."

Third, the parties' post-trial submittals reveal there was a dispute over the language of the proposed final judgment, which imposed personal liability on Morgan for Dattolo's attorney's fees and costs under <u>Allen</u>. The judge decided this issue in Morgan's favor by striking his name from the final judgment. Nonetheless, we conclude the judge erred because he never explained the reasons for not holding Morgan liable under <u>Allen</u> and his simply striking Morgan's name in the form of judgment failed to satisfy <u>Rule</u> 1:7-4.

_____

cost, including reasonable attorney's fees, incurred in enforcing or defending any rights or obligations created by the agreement."

14

Fourth, while "conclud[ing] [Dattolo's counsel's] hourly rate and services rendered [we]re reasonable and appropriate," the judge reduced the amount awarded because he ultimately determined "the consumer fraud violation did not result in any ascertainable losses." Dattolo argues the fees were impermissibly reduced because "no lodestar was applied." We conclude Dattolo was denied due process by not having notice and an opportunity to be heard on the reduction of his attorney's fees. Giambanco, 422 N.J. Super. at 315-16.

Any remaining arguments raised by Dattolo are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part, vacated and remanded in part for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1450-22