**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0067-24

PHILIP DATTOLO,

    Plaintiff-Respondent/
Cross-Appellant,

v.

EMC SQUARED, LLC and
EDWARD T. MORGAN,

    Defendants-Appellants/
Cross-Respondents.

_____

        Submitted August 11, 2025 – Decided August 20, 2025

        Before Judges Firko and Paganelli.

        On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-0369-20.

        Oller & Breslin, LLC, attorneys for appellants/cross-respondents (John M. Breslin, of counsel and on the briefs).

        Joseph J. Fritzen, attorney for respondent/cross-appellant.

PER CURIAM

Defendant Edward T. Morgan (Morgan) appeals from the trial court's amended final judgment, dated August 12, 2024, holding him individually liable for a portion of plaintiff's Philip Dattolo's (Dattolo) attorney's fees. Because we conclude the trial court's factual findings were ably supported in the record and it correctly applied the law, we affirm. Dattolo cross-appeals from the amended final judgment arguing the trial court erred in reducing the fee amount. Because we conclude the trial court did not misuse its discretion in reducing the amount of the attorney's fees, we affirm.

We are fully familiar with the facts and procedural history regarding this matter, having considered Dattolo's initial appeal.[1] We recite from our earlier opinion for context:

> On October 23, 2018, Dattolo and defendant Edward Morgan, on behalf of EMC (collectively defendants), executed a written contract. The contract called for EMC to construct a new single-family home in Boonton, New Jersey. Morgan was the sole member of EMC and performed the work under the contract.
>
> In March 2019, EMC presented Dattolo with a list of extras and sought additional payment. Dattolo accepted some of the items and agreed to pay a lesser amount. Toward the end of the job, EMC created a change order for additional work. The parties never signed the change order.

---

[1] Dattolo v. EMC Squared, LLC, No. A-1450-22 (App. Div. Mar. 28, 2024).

. . . .

On February 14, 2020, Dattolo filed a five-count complaint against EMC and Morgan. Dattolo alleged: (1) breach of contract; (2) unjust enrichment; (3) breach of the implied covenant of good faith and fair dealing; (4) common law fraud; and (5) violation of the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -228, for failure to comply with Home Improvement Practices (HIP) regulations, N.J.A.C. 13:45A-16.1 to -16.2.

Defendants filed an answer, denying all allegations and asserting various defenses and a counterclaim. In the counterclaim, defendants alleged Dattolo "breached the contract by failing to pay [what wa]s due and owing." Dattolo filed an answer to the counterclaim with affirmative defenses.

The judge held a two-day bench trial on December 5 and 6, 2022. As relevant here, . . . Dattolo urged EMC violated the CFA/HIP because EMC failed to provide him a change order that should have been signed by all parties. As a result of this failure Dattolo sought $30,903.95 in damages to be trebled, and attorney's fees and costs under the CFA/HIP. He sought to impose joint and several liability on EMC and Morgan.

At the conclusion of trial, the judge determined: (1) Dattolo failed to prove Morgan was personally liable and dismissed Morgan from the matter; . . . (4) there were violations of the CFA because the law required written contracts and change orders; (5) despite the CFA violations, there were no "ascertainable costs directly related to the absence of a change order"; and (6) EMC violated the CFA, "particularly the change orders," and, even in the

3

absence of finding an ascertainable loss, he could award counsel fees and was "prepared to award some counsel fees."

The judge instructed Dattolo's counsel to submit a form of final judgment, providing for, but leaving blank, the amount for attorney's fees and costs. The judge requested Dattolo's counsel submit an affidavit of services. On December 7, 2022, counsel submitted a form of final judgment and an affidavit of services requesting $25,472.50 in fees and $2,360.81 in costs. In the cover letter, counsel advised that he included "Morgan, as it would appear that . . . Morgan would remain individually liable for the attorney fees due to consumer fraud violations under Allen v. V & A Bros., Inc., 208 N.J. 114, 131 (2011), notwithstanding that [Dattolo] did not establish an ascertainable loss."

On the same day, defendants' counsel submitted a letter brief. He advised that he "ha[d] no issue with the amount [of fees and costs] charged." However, he "t[ook] issue with [Dattolo's counsel] attempting to enter a judgment against [Morgan] individually for the attorney's fees and costs." Defendants' counsel contended the judge "dismissed [Morgan] as an individual from the case," and Allen "d[id] not hold parties dismissed from a case can be held responsible for attorney's fees and costs." Defendants' counsel requested the judge delete portions of the proposed final judgment that imposed individual liability on Morgan for attorney's fees and costs.

On December 9, 2022, the judge executed the final judgment on the breach of contract claim "in the sum of $29,603.95 in favor of [Dattolo], and against [EMC]." Also, without hearing further from the parties, the judge struck the language holding Morgan and EMC "jointly, severally and in the alternative"

4

liable for Dattolo's attorney's fees and costs. The final judgment provided EMC, solely, was liable for Dattolo's attorney's fees and costs in the sum of $15,000. In explaining the awarded attorney's fees, the judge wrote on the final judgment "[t]he fees and costs submitted are granted in part. The court concludes the hourly rate and services rendered are reasonable and appropriate. The full amount sought ($25,472.50 and costs of $2[,]360.81) are not awarded because the consumer fraud violation did not result in any ascertainable loss."

[Dattolo, slip op. at 2-6 (all but last alteration in original) (internal footnotes omitted) (citation reformatted).]

We were "satisfied the judge correctly determined Dattolo failed to establish an ascertainable loss as a result of the absence of a change order." Id. at 12.

However, we expressed a concern with

> the judge's handling of the award of Dattolo's attorney's fees. First, defendants' opposition to the form of judgment required the judge to determine, in the exercise of discretion, whether the matter should have been listed for a hearing. See R. 4:42-1(c). Since no explanation was given for why there was no hearing, the judge abused his discretion in this regard. Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 572 (2002).
>
> Second, Dattolo argues he was "entitled to attorney['s] fees and costs of suit as permitted by . . . paragraph 6.11 of the contract itself." The Supreme Court ordinarily requires plenary proof rather than an affidavit when a party seeks to enforce attorney's fees

5

pursuant to a contractual provision. <u>Cohen v. Fair Lawn Diaries, Inc.</u>, 44 N.J. 450, 452 (1965). There was no hearing in this matter and the judge failed to explain why a plenary hearing was unnecessary prior to awarding attorney's fees and costs. Further, the judge did not provide any analysis of the parties' contractual provision. These failures violated <u>Rule</u> 1:7-4 which requires a "court [to] find the facts and state its conclusions of law."

Third, the parties' post-trial submittals reveal there was a dispute over the language of the proposed final judgment, which imposed personal liability on Morgan for Dattolo's attorney's fees and costs under <u>Allen</u>. The judge decided this issue in Morgan's favor by striking his name from the final judgment. Nonetheless, we conclude the judge erred because he never explained the reasons for not holding Morgan liable under <u>Allen</u> and his simply striking Morgan's name in the form of judgment failed to satisfy <u>Rule</u> 1:7-4.

Fourth, while "conclud[ing] [Dattolo's counsel's] hourly rate and services rendered [we]re reasonable and appropriate," the judge reduced the amount awarded because he ultimately determined "the consumer fraud violation did not result in any ascertainable losses." Dattolo argues the fees were impermissibly reduced because "no lodestar was applied." We conclude Dattolo was denied due process by not having notice and an opportunity to be heard on the reduction of his attorney's fees. <u>Midland Funding, LLC v. Giambanco</u>, 422 N.J. Super. 301, 315-16 (App. Div. 2011).

[<u>Dattolo</u>, slip op. at 13-15 (alterations in original) (citations reformatted).]

6

On remand, the parties stipulated that no hearings were required. Further, Dattolo stated he was "not really pursuing the availability . . . [of fees] . . . under the contract at this point." Instead, he was focused "on the consumer fraud and the Allen case." Therefore, the trial court stated "'the issues are . . . the liability of [Morgan] individually and the amount."

After hearing the parties' arguments on these issues on remand, the trial court issued an oral opinion. The court stated:

> I do believe that I did err by not finding [Morgan] individually liable and I rely upon the case Allen of course but also [an unpublished case] . . . . Here we have a . . . one-person contract with a long[-]standing relationship with [Dattolo].
>
> . . . [H]ere [Morgan] ran the show. He . . . did the deal.
>
> . . . He[ i]s . . . the guy that did it.
>
> . . . I did[ no]t find liability on the basis of the consumer fraud violation but there clearly were consumer fraud violations. It just was not in excess to the damage as found.
>
> So I do find him personally liable. I do believe because of that fact, however, it is not appropriate for me to award -- and I do[ no]t think the law requires me to award the full amount. I think the [$]15,000 is a fair determination so I will hold the judgment at [$]15,000 and, as I said before, if there were . . . violations of the [CFA] we[ woul]d be talking about the full fees and treble damages and that is not the case here. However,

there were violations that just did[ no]t lead to a finding that there was a CFA violation. So I think it[ i]s appropriate that I reduce the fees, therefore, . . . because of that fact, particularly in light of the personal liability issue. So for those reasons I do find [Morgan] individually liable and modify the judgment entered . . . against him for [$]15,000 in counsel fees.

. . . So I will [enter] a modified judgment imposing the personal liability on [Morgan] in the amount of [$]15,000.

On appeal, Morgan argues the trial court abused its discretion in concluding he was individually liable for Dattolo's attorney's fees. In his reply and answering brief, he clarifies that he "seeks de novo review." Dattolo, in his cross-appeal, contends the trial erred in reducing the fee amount. Morgan contends the reduction was fair considering Dattolo's award was premised on breach of contract and he sustained no ascertainable loss because of the CFA violation.

Our review of a final determination made following a bench trial is "subject to a limited and well-established scope of review." Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011). We do not disturb a trial court's findings of fact unless "convinced that those findings and conclusions [a]re 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Greipenburg

A-0067-24

v. Twp. Of Ocean, 220 N.J. 239, 254 (2015) (quoting Rova Farms Resort v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). Therefore, a trial court's factual findings are "considered binding on appeal when supported by adequate, substantial and credible evidence." Rova Farms, 65 N.J. at 484.

"To the extent that the trial court's decision constitutes a legal determination, we review it de novo." D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013). "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Morgan's Individual Liability

Morgan "does not dispute that reasonable attorney fees and costs should be awarded against" EMC. However, he argues the trial court erred by relying on Allen and finding him individually liable for Dattolo's attorney's fees.[2] Morgan argues "[t]he liberally construed protection afforded to [Dattolo] in this case should not include piercing protections given by a limited liability company when there is no evidence of deception, fraud, tort or other misrepresentation."

---

[2] In part, the trial court also relied on an unpublished opinion. Rule 1:36-3 provides: "No unpublished opinion shall constitute precedent or be binding upon any court. . . . [E]xcept to the extent required by res judicata, collateral estoppel, the single controversy doctrine, or other similar principle of law, no unpublished opinion shall be cited by any court."

A-0067-24

He relies on State, Department of Environmental Protection v. Ventron Corp., 94 N.J. 473 (1983), a Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 to -23.24, case for the proposition "that a court 'will not pierce a corporate veil' to hold a principal liable unless there is evidence the principal was 'a mere instrumentality of the [corporation].'" (Alteration in the original). He states imposing individual liability on him "would violate the doctrine against piercing a corporate veil except when it is proven that there is no separate corporate existence between the LLC and the individual defendant."

Further, Morgan contends Dattolo "is a savvy consumer who worked as a[n] . . . [i]nsurance broker and owns an apartment building and flips houses for profit. He is not the innocent consumer taken advantage of by an unscrupulous contractor." He asserts he and Dattolo "were close friends and prior to this lawsuit trusted each other and it can be easily argued that [Dattolo] is using the protection afforded under the [CFA] as a sword instead of a shield." He adds "during the decade . . . Dattolo and [he] worked together on construction projects, they never once used a signed contract."

We start with an analysis of the statute. The CFA "should be construed liberally in favor of consumers." Cox v. Sears Roebuck & Co., 138 N.J. 2, 15 (1994). It provides:

The act, use or employment by any person of any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; . . . .

[N.J.S.A. 56:8-2.]

"There is no statutory exception for sophisticated consumers." O'Brien v. Cleveland (In re O'Brien), 423 B.R. 477, 488 (Bankr. D.N.J. 2010). "It is the character of the transaction, not the identity of the purchaser, which determines whether the CFA is applicable." Finderne Mgmt. Co., Inc. v. Barrett, 402 N.J. Super. 546, 570 (App. Div. 2008). Under N.J.A.C. 13:45A-16.2(a)(12), it is an "unlawful" "act[]" or "practice[]" when "contracts" and "all changes in the terms and conditions thereof" are not in writing and not "signed by all parties thereto."

In Scibek v. Longette, we cautioned against the use of the CFA "as a sword rather than a shield." 339 N.J. Super. 72, 82 (App. Div. 2001). In that context, we noted "[w]here, for example, there is no dispute as to the work authorized to be done and the agreed upon price, it seems highly unfair to deny . . . any affirmative right to recover merely because of a technical, inadvertent violation

11

of the [CFA]'s prescription." Ibid. Nevertheless, there is no such concern when "[t]he overriding fact is that . . . [a] violation of the [CFA] created the climate for the dispute that ultimately developed." Ibid.

Under the CFA,

> [a]ny person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act or the act hereby amended and supplemented may bring an action or assert a counterclaim therefor in any court of competent jurisdiction. In any action under this section the court shall, in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest. In all actions under this section, . . . the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit.
>
> [N.J.S.A. 56:8-19 (emphasis added).]

"[A] consumer-fraud plaintiff can recover reasonable attorneys' fees, filing fees, and costs if that plaintiff can prove that the defendant committed an unlawful practice, even if the victim cannot show any ascertainable loss and thus cannot recover treble damages." Cox, 138 N.J. at 24. "The fundamental remedial purpose of the Act dictates that plaintiffs should be able to pursue consumer-fraud actions without experiencing financial hardship." Id. at 25.

"[A] trial court should reduce the . . . fee [sought] if the level of success achieved in the litigation is limited as compared to the relief sought." Rendine

v. Pantzer, 141 N.J. 292, 336 (1995). When a party "has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." Ibid. (quoting Hensley v. Eckerhart, 461 U.S. 424, 436 (1983)). "[F]ee determinations by trial courts will be disturbed only on the rarest occasions, and then only because of a clear abuse of discretion." Id. at 317.

In Allen, the New Jersey Supreme Court stated "[i]n light of the broad remedial purposes of the CFA . . . it is clear that an individual who commits an affirmative act or a knowing omission that the CFA has made actionable can be liable individually." 208 N.J. at 131. While "liability [could be imposed] on the individual's corporate employer for such an affirmative act, there is no basis on which to conclude that the statute meant to limit recourse to the corporation, and thereby to shield the individual from any liability in doing so." Ibid.

The Court stated "[a]lthough one might engage in a[] . . . veil-piercing approach, nothing in the CFA or the relevant precedents suggests that in the absence of veil-piercing the individual employee or officer will be shielded from liability for the CFA violation he or she has committed." Id. at 133.

13

Nevertheless, the court noted, in each of the historical instances where individual liability was imposed, the "courts focused on the acts of the individual employee or corporate officer to determine whether the specific individual had engaged in conduct prohibited by the CFA." Id. at 132.

Because of the "strict liability" nature of CFA "regulatory violation[s]," the Court emphasized that "notions of fairness" were implicated. Id. at 133. Further, the Court noted:

> [I]ndividual liability for regulatory violations ultimately must rest on the language of the particular regulation in issue and the nature of the actions undertaken by the individual defendant. Some regulatory violations will be ones over which an employee, for example, will have no input and therefore no control. An employee who merely utilizes a form contract selected by the corporate employer that contains technical violations relating to font size . . . for example, could not in fairness be held individually liable for the resulting loss suffered by a customer. On the other hand, there are many regulations promulgated pursuant to the CFA that identify prohibited practices of a type that focus on the behavior of individual employees or actors and that therefore might support personal liability.
>
> [Ibid.]

Moreover,

> [i]n considering whether there can be individual liability for these regulatory violations, a distinction can be drawn between the principals of a corporation

A-0067-24

and its employees. The principals may be broadly liable, for they are the ones who set the policies that the employees may be merely carrying out. Therefore, if the principals have adopted a course of conduct in which written contracts are never used, in clear violation of the regulation, there may be little basis on which to extend personal liability to the employee who complies with that corporate policy.

[Id. at 134.]

We first consider Morgan's arguments in light of this well-established law, and conclude they have no merit. Morgan argues Dattolo was "savvy" and thus ineligible for the protection under the CFA. However, Morgan's focus on Dattolo, rather than on their transaction, misses the mark. Their transaction was directly dictated by the requirements of N.J.A.C. 13:45A-16.2(a)(12), and there is no dispute the code was violated.

Morgan's argument that Dattolo is using the CFA as a sword rather than a shield is also misplaced. In defendants' counterclaim they sought payment for the very items that were never reduced to writing. Therefore, as in Scibek, the violation of the code "created the climate for the dispute that ultimately developed." 339 N.J. Super. at 82.

In addition, Morgan's argument that imposing individual liability would violate piercing doctrines is contrary to the Allen Court's holding that fees can be imposed in the "absence of veil-piercing." 208 N.J. at 133.

A-0067-24

The trial court fairly reviewed the parties' transaction and found Morgan, the principal of EMC, "ran the show"; "did the deal"; and was "the guy that did it." These factual findings are ably supported in the record, as Morgan was the sole and individual actor for EMC and he failed to provide the requisite change order.

Therefore, we affirm the trial court's judgment imposing individual liability on Morgan for Dattolo's attorney's fees.

Reduction of Attorney's Fee Amount

In his cross-appeal, Dattolo contends the trial court erred in reducing the attorney's fee amount to be paid by Morgan. He argues "the refusal to award the actual amount of fees requested despite a concession by [defendants] that the amount was reasonable is an abuse of discretion."

As to the amount of fees awarded, Morgan contends the trial court did not abuse its discretion in reducing the amount. First, he argues the reduction "was a fair conclusion on the record." He notes the court's consideration of: (1) the regulatory violation of the CFA; (2) there was no ascertainable loss under the CFA; (3) Dattolo's "success on the breach of contract claim"; and (4) "no damages were awarded on the CFA claim." We agree.

16

We reiterate that attorney's fee awards are disturbed "only on the rarest occasions, and then only because of a clear abuse of discretion." <u>Rendine</u>, 141 N.J. at 317. Here, the court correctly considered Dattolo's attorney's fee request encompassed work that exceeded the CFA violation claim. Under these circumstances, we conclude the trial court did not misuse its discretion in reducing the attorney's fee amount.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division